## JOHN MILLARD *v.* CONNECTICUT PERSONNEL APPEAL BOARD

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued December 9, 1975—decision released April 6, 1976

*Richard J. Lynch,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellant (defendant).

*Edward T. Lynch, Jr.,* for the appellee (plaintiff).

Longo, J.   On September 14, 1970, the plaintiff, John Millard, was first employed by the state of Connecticut in a noncompetitive position in the classified service.   He attained the status of "permanent employee" upon satisfactory completion of a six-month probationary or working test period, and continued to work for the state until he resigned on November 26, 1971.   The plaintiff was reemployed by the state on December 10, 1973, in the same classification he had previously held.   On February 28, 1974, the plaintiff was dismissed from state service without a hearing.   The plaintiff appealed to the defendant personnel appeal board for review of that action.   The board ruled that it lacked jurisdiction to hear his appeal on its merits because at the time of his dismissal the plaintiff was not a "permanent employee."   That ruling was based on a determination by the board that, since the plaintiff had resigned in 1971, upon his reemployment he held the status of a new employee and was required to undergo a second six-month probationary period. The plaintiff appealed from the board's ruling to the Court of Common Pleas and the court found the issues for the plaintiff.   The court held that the plaintiff was entitled to a hearing before the board because he was a "permanent employee" at the time of his dismissal and because of his constitutional right to due process.   From that holding the defendant board has appealed to this court.

Section 5-201 of the General Statutes provides for the appointment of a personnel appeal board consisting of nine members whose duty it is to hear and act upon appeals filed in accordance with General Statutes § 5-202 (a) by aggrieved state employees. Section 5-202 (a) provides that "[a]ny permanent employee holding a position in the classified service who is . . . dismissed, or is individually aggrieved . . . may obtain a review of such action or alleged grievance by presenting a written appeal to the personnel appeal board." We first consider whether the plaintiff was a "permanent employee" and as such entitled to a hearing before the defendant board under § 5-202 (a).

"Permanent employee" is defined in General Statutes § 5-196 (r) as "an employee holding a position in the classified service under a permanent appointment." To obtain such permanent appointment, an employee must satisfy a six-month working test requirement, under General Statutes § 5-230 and Regulations, Connecticut State Agencies § 5-9-14.[1] Upon successful completion of the probationary period, the appointing authority determines whether the employee merits permanent status. In some circumstances, an individual who previously had attained permanent status and who is returning to state service is not required to undergo a probationary period. Under Regulations, Connecticut State Agencies § 5-9-14 (3), no additional working

---

[1] "[General Statutes] Sec. 5-230. WORKING TEST PERIODS. The commissioner of personnel and administration shall establish appropriate working test periods . . . ."

"[Regs., Conn. State Agencies] Sec. 5-9-14. WORKING TEST PERIOD. Each appointee to a permanent position in the classified service shall serve a working test period of six months. . . . An employee shall attain permanent status in the class upon satisfactory completion of a working test period. . . ."

test period is required of an appointee "[1] from a reemployment list [2] who previously served a satisfactory working test in the same or in a comparable class in the same agency and [3] had permanent status therein within the preceding three years." While the undisputed facts show that the plaintiff had satisfied requirements 2 and 3, we find that he has not satisfied requirement 1 in that his name was not taken from a reemployment list when he was reappointed to state service. Under General Statutes § 5-248 (d) (1969 Sup.), which was in effect when the plaintiff resigned, the name of an employee who had resigned would be placed on a reemployment list if that employee had resigned in good standing and had withdrawn his resignation within one year from its effective date.[2] The uncontested finding of the board is that the plaintiff never withdrew his resignation; therefore, his name was never placed on a reemployment list. He cannot benefit from the provisions of § 5-9-14 (3).

Administrative regulations "are given the force and effect of law." *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 154, 285 A.2d 352. It is explicitly required by § 5-9-14 (3) of the regulations that in order to be entitled to a waiver of the additional probationary period, the reappointment to state service must have been made from a reemploy-

---

[2] By Public Acts 1972, No. 231, § 1, effective May 18, 1972, General Statutes § 5-248 (d) was repealed and substituted in lieu thereof was a provision limiting use of a reemployment list to those employees on authorized leaves of absence. The regulation corresponding to § 5-248 (d) reads in relevant part: "WITHDRAWAL. . . . The name of an employee withdrawing his resignation shall be placed on the eligible reemployment list for the class, provided the employee resigned in good standing . . . ." Regs., Conn. State Agencies § 5-9-19 (c). Insofar as § 5-9-19 (c) is inconsistent with Public Act 231, it is ineffective. See *Lynch* v. *Tilden Produce Co.,* 265 U.S. 315, 321, 44 S. Ct. 488, 68 L. Ed. 1034.

ment list. This is not a mere technical requirement. The term "working test" is defined in General Statutes § 5-196 (z) as "a trial working period made a part of the selective process under the provisions of this chapter and by regulations issued in accordance herewith, during which the work and conduct of the employee shall be noted by the appointing authority or his authorized agent and reported upon to determine whether such employee merits permanent appointment." The expressed intent of the legislature is to provide the opportunity to observe and determine whether an employee, by his work and conduct, merits the status of "permanent employee." The opportunity to make such observations upon an individual's reentry into state service is as critical as that upon his original employment. Over the elapsed time, an individual's ability to work may have been impaired or his attitudes and motivations may have changed. Thus, the additional test period is of important practical value in the reevaluation of an employee who is returning to state service.

We find that the trial court erred in concluding that the plaintiff was a "permanent employee." At the time of his dismissal on February 28, 1974, he was a probationary employee, required to complete a second test period before attaining permanent status. The defendant board was correct in declining to review his dismissal because it lacked jurisdiction under General Statutes § 5-202 (a).

We next consider whether the trial court erred in holding that the plaintiff had a constitutional right to a hearing before the board. The court based its holding on the principle that an individual must be accorded due process in the form of a hearing

before he can be deprived of a significant property interest. A "property interest" may take many forms, and, while it is clear that the term extends "well beyond actual ownership of real estate, chattels, or money," it is equally clear that it does not include mere need, desire or unilateral expectation. See *Board of Regents* v. *Roth,* 408 U.S. 564, 572, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548. The origin of a property interest is not in the constitution, but in "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents* v. *Roth,* supra, 577. Under the laws of this state, which are discussed above, it is clear that before the satisfactory completion of the working test period, the plaintiff's employment was merely probationary. His case is distinguishable from that of public employees who are tenured teachers; see *Slochower* v. *Board of Education,* 350 U.S. 551, 76 S. Ct. 637, 100 L. Ed. 692; or those without tenure or formal contract who were hired with implied promises of continued employment; see *Connell* v. *Higgenbotham,* 403 U.S. 207, 208, 91 S. Ct. 1772, 29 L. Ed. 2d 418. As the plaintiff had no legitimate claim of entitlement to future employment, he had no protected property interest.

We find ourselves in agreement with the conclusion of the court in *Tichon* v. *Harder,* 308 F. Sup. 839, 842 (D. Conn.): "Although the Supreme Court has warned that to generalize 'that there is no constitutionally protected right to public employment is to obscure the issue'; *Wieman* v. *Updegraff,* 344 U.S. 183, 191, 73 S. Ct. 215, 97 L. Ed. 216 (1952), it has also stressed that 'to acknowledge that there exist constitutional restraints upon state and federal

governments in dealing with their employees is not to say that all such employees have a constitutional right to notice and a hearing before they can be removed.' *Cafeteria and Restaurant Workers Union Local 473, AFL-CIO* v. *McElroy,* 367 U.S. 886, 898, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961). In cases analogous to the present one, the courts have uniformly held that a probationary employee, in the absence of legislation, is not entitled to the protective procedure accorded a career or permanent employee. *Jaeger* v. *Freeman,* 410 F.2d 528 (5 Cir. 1969); *Medoff* v. *Freeman,* 362 F.2d 472 (1 Cir. 1966); *Morris* v. *Gantz,* Civ. No. 13,044 (D. Conn. 1969); *Parker* v. *Board of Education,* 237 F. Supp. 222 (D. Md. 1965) aff'd 348 F.2d 464 (4 Cir. 1965), cert. denied, 382 U.S. 1030, 86 S. Ct. 653, 15 L. Ed. 2d 543 (1966)." We conclude that the plaintiff, as a probationary employee having no property interest in continued employment by the state of Connecticut, had no constitutional right to a hearing before the defendant board.

The plaintiff alleges in his complaint that he was dismissed "pursuant to a claim he was overweight." Even if we assume that allegation to be true, the plaintiff's constitutional right to due process is not indicated. The Supreme Court of the United States has held that " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' [citations omitted]." *Board of Regents* v. *Roth,* supra, 573. The claim made here, however, does not stigmatize the plaintiff or damage his standing in the community, nor does it foreclose him from other employment possibilities. A hearing prior to dismissal was not required.

There is error, the judgment is set aside and the case is remanded to the Court of Common Pleas with direction to render judgment dismissing the plaintiff's appeal.

In this opinion the other judges concurred.