MERRIMAC ASSOCIATES, INC. *v.* JOSEPH DiSESA ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued January 9—decision released May 13, 1980

512

*Jack Stock,* with whom, on the brief, was *Eugenie Dieringer,* for the appellant (plaintiff).

*H. William Shure,* for the appellee (named defendant et al.).

ARTHUR H. HEALEY, J.   The sole issue on this appeal is whether the plaintiff is aggrieved by, and therefore has standing to appeal from, a probate court decree approving the sale of real estate that is part of a decedent's estate.  The plaintiff appealed to the Superior Court from an order of the Probate Court for the district of Madison approving the sale at a continued hearing, giving the following "Reasons of Appeal":[1]   (1) The Probate Court conducted the continued hearing upon the application to sell the real estate prior to the announced time of that hearing without notice to the plaintiff; and (2) the plaintiff was thereby deprived of the opportunity of submitting to the court its offer to purchase those premises, although the purpose of continuing the original hearing was to afford it that very opportunity.  The defendants DiSesa and Kilpatrick, who were executors of the will under which the real estate in question was being sold, moved to dismiss the appeal for the reason that the Superior Court lacked jurisdiction of the subject matter because the plaintiff is not an aggrieved party under General Statutes § 45-288.[2]  The motion to dismiss was granted and this appeal followed.

---

[1] See Practice Book, 1978 § 194.

[2] General Statutes § 45-288 provides in part:   "Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the superior court for the judicial district where such court of probate is held . . . ."

Before deciding the motion to dismiss the trial court conducted an evidentiary hearing limited solely to the issue of the plaintiff's aggrievement, and, hence, standing to appeal under General Statutes § 45-288. Because the right to appeal from the decision of a Probate Court is statutorily conferred by § 45-288, the absence of aggrievement, as required by that statute, is a defect that deprives the Superior Court of jurisdiction to entertain the appeal. See *Maloney* v. *Taplin,* 154 Conn. 247, 250, 224 A.2d 731 (1966). Thus, the question before the trial court was whether, as a matter of fact, the plaintiff was aggrieved, a precondition to the right of appeal and the jurisdiction of the Superior Court.[3]

The trial court based its decision upon the following relevant facts: On January 18, 1979, at 11 a.m. a hearing was held at the Madison Probate Court on the defendants' application for approval of a sale-purchase agreement for certain real estate executed by the defendants with Strawberry Hill Associates. By a letter, dated December 20, 1978, the defendant DiSesa invited the real estate broker for the plaintiff in this transaction to attend the January 18, 1979 hearing, at which full opportunity

---

[3] This procedure is distinct from that which would be appropriate upon the filing of a motion to strike. The motion to strike tests only the legal sufficiency of the allegations of the motion to appeal. See General Statutes § 45-293; Practice Book, 1978 § 194 (probate appeals to proceed "in analogy to civil actions"). Thus, the question upon the filing of a motion to strike an appeal in a probate matter upon the ground of aggrievement is, assuming the truth of the allegations in the motion to appeal, whether those facts are sufficient, as a matter of law, to constitute aggrievement under the statute. If the allegations are sufficient, the court should proceed to determine in the course of the appeal whether the plaintiff has proved the truth of his allegations. See *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 483–84, 338 A.2d 497 (1973).

would be given to that broker to submit an offer to purchase the real estate involved. That letter also assured the plaintiff's broker that "the best offer as determined by price, terms and conditions will be accepted at the hearing and a Court order for authority to sell entered accordingly." At the January 18 hearing, a representative of the plaintiff submitted a written proposal to buy; this proposal included a price, which was "considerably higher" than the offer presented by Strawberry Hill, and certain conditions of purchase. Because the conditions of the proposal were not "entirely clear" and, therefore, were unacceptable to the defendants, the hearing was continued for two weeks to January 31, 1979, to permit further negotiations between the plaintiff and the defendants. The presiding probate judge disqualified himself from further participation and another probate judge was designated to act in the matter. Thereafter, the parties met on two separate occasions to negotiate the conditions of purchase and, as a result, it was agreed that a firm offer to buy, together with a substantial deposit, would be submitted to the Probate Court at the continued hearing.

The time of the continued hearing was assumed to be 11 a.m., the same hour as the original hearing, and this was positively confirmed by the plaintiff. Later, the acting judge advanced the hour to 9:30 a.m., as he had other commitments at the time the hearing was scheduled. The clerk was instructed to notify the parties concerned, but he notified only some. The plaintiff received no notice of the change in time. On January 30, 1979, the plaintiff's attorney informed the defendants of the contents of the offer to buy that would be submitted the next day. The defendant Kilpatrick suggested that the offer,

to be firm and acceptable to the Probate Court, should come from the principal and not its attorney. On January 31, 1979, the acting judge, when informed that all parties were not present and that there was some question about notice, continued the hearing from 9:30 a.m. to 10 a.m. When the hearing was opened at 10 a.m., a representative of the plaintiff explained the delay of the plaintiff's offer and stated that a firm offer was on its way and would be arriving "momentarily." The defendant Kilpatrick tried to have the hearing postponed for a short time pending the arrival of the plaintiff's offer, but the acting judge refused to delay the hearing any longer. He proceeded to conclude that Strawberry Hill's proposal was the only one before the court and then approved that offer. The hearing closed immediately, and within several minutes, the plaintiff's agent arrived with its offer, executed by an officer of the corporation. The defendant Kilpatrick was unsuccessful in his attempt to have the judge return to the courtroom and discovered that he had left the building. Attorney Senie, who was prepared to present the offer, was fully authorized to do so on behalf of the plaintiff. No action was taken on the plaintiff's request for reconsideration, which was later presented to the acting judge.

On appeal the plaintiff claims that the trial court erred in concluding from the facts found that it was not "aggrieved," within the meaning of General Statutes § 45-288, by the decision of the Probate Court approving the sale. We agree with the plaintiff.

As noted above, under General Statutes § 45-288, an appeal may be taken from a decision of the Probate Court only by a person aggrieved by the deci-

sion or decree appealed from. The concept of standing, as presented by the question of aggrievement, "is a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal an order of the Probate Court." *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 484, 338 A.2d 497 (1973); see *Gaucher* v. *Estate of Camp,* 167 Conn. 396, 400, 355 A.2d 303 (1974). A person who seeks to appeal from an order of the Probate Court must set forth in his motion for appeal (1) the interest of the appellant in the subject matter of the decree or order appealed from or in the estate; see General Statutes § 45-293; and (2) the adverse effect of the decree or order on that interest. *Hartford Kosher Caterers, Inc.* v. *Gazda,* supra, 482. "A grievance to one's feelings of propriety or sense of justice is not a grievance which gives a right of appeal. *Norton's Appeal,* 46 Conn. 527, 528. On the other hand, the claim that to be aggrieved a plaintiff must have a pecuniary interest is too narrow a test to apply to appeals from probate." *Stanley* v. *Stanley,* 175 Conn. 200, 202, 397 A.2d 101 (1978); see *Gaucher* v. *Estate of Camp,* supra, 401; *Hartford Kosher Caterers, Inc.* v. *Gazda,* supra, 484; see also 1 Locke & Kohn, Conn. Probate Practice § 188. Instead, the existence of aggrievement depends upon "whether there is a possibility, as distinguished from a certainty, that some legally protected interest which [an appellant] has in the estate has been adversely affected." *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953); see *Gaucher* v. *Estate of Camp,* supra, 401; *Hartford Kosher Caterers, Inc.* v. *Gazda,* supra, 486. Moreover, it must appear that the interest which is adversely affected is a direct interest in the sub-

ject matter of the decree from which the appeal is taken. *Bridgeport* v. *Steiber,* 143 Conn. 720, 722, 126 A.2d 823 (1956); *Williams* v. *Houck,* 143 Conn. 433, 433, 123 A.2d 177 (1956); *Weidlich* v. *First National Bank & Trust Co.,* 139 Conn. 652, 656, 96 A.2d 547, cert. denied, 346 U.S. 826, 74 S. Ct. 45, 98 L. Ed. 351 (1953).

We must determine whether, under the facts found, the plaintiff had an interest in the proceedings below sufficient to confer upon it standing under General Statutes § 45-288. In *Hartford Kosher Caterers, Inc.* v. *Gazda,* supra, we held (p. 486) that a corporation that had bid on property of an estate and that was informed by the court that its offer would be approved but later was rejected by the court, had standing to appeal under § 45-288. We stated (pp. 485–86): "Hartford Kosher's status as the chosen potential purchaser under the [first] decree, while not the same as that of a party to a contract for the sale of land, does constitute an interest. This status and its attempted termination serve to distinguish this case from *Kaskel* v. *Steinberg,* 142 Conn. 379, 114 A.2d 853. If this status was terminated by the order of August 8, as Hartford Kosher pleaded, the result would constitute injury in fact sufficient to satisfy the requirements of aggrievement." As our holding in *Hartford Kosher Caterers, Inc.,* clearly implied, the language of *Kaskel* v. *Steinberg,* supra, 384, that "[t]he only persons who are affected by an order approving the sale of property constituting an asset of an estate are those to whom the estate will be distributed, or creditors if the estate is insolvent," is far too narrow. While one who bids upon the property of an estate offered for sale has no interest in the property itself, he does have an interest

in the proceedings employed by the court to approve the sale. It may be that a party appealing from an order of a probate court often has an interest in the estate itself, as a distributee or a creditor. But § 45-293 does not require the interest involved to be solely one in the estate itself.

The plaintiff was invited by the executors of the estate to submit an offer for the purchase of estate property. It was informed that "the best offer as determined by price, terms and conditions will be accepted at the hearing." The plaintiff appeared at that hearing and submitted an offer "considerably higher" than the single other offer submitted by Strawberry Hill. Because the conditions of the offer were uncertain, however, the court continued the hearing for two weeks to permit further negotiations between the plaintiff and the defendants. At that point, the plaintiff was entitled to a fair procedure in the court in accordance with basic principles of due process.

The property interests protected by the fourteenth amendment to the United States Constitution extend beyond the "ownership of real estate, chattels, or money," and may take many forms. *Board of Regents* v. *Roth,* 408 U.S. 564, 572, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). As the United States Supreme Court said in *Roth* (p. 577): "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." See *Millard* v. *Connecticut Personnel Appeal Board,* 170 Conn. 541,

546, 368 A.2d 121 (1976). The court's order to continue the hearing to January 31, 1979, so that the plaintiff and the defendants could negotiate and arrive at mutually acceptable conditions clearly anticipated an opportunity for the plaintiff to submit an acceptable offer at that time. The decision to continue the hearing was based upon a mutual and explicit understanding of court and counsel and conferred upon the plaintiff the right to appear at that hearing at the time agreed upon, unless notified to the contrary. When a party to an action consents to a continuance it is understood that such a continuance will not be prejudicial to his interests. See 17 C.J.S., Continuances § 11; *National Cooperative Hail Assn.* v. *Doran Bros.*, 121 Neb. 746, 748, 238 N.W. 527 (1931). This principle applies with equal force here. Once the continuance was granted and relied upon, it was not to be set aside without prior notice if to do so would cause injustice to either party. See *Town of Portage* v. *Clifford,* 254 Ind. 443, 450–51, 260 N.E.2d 566 (1970).

The defendants argue that inasmuch as they were not required to obtain court approval of the sale under the terms of the will the plaintiff could not possibly have a protected interest in the proceedings voluntarily commenced by the defendants. The simple answer to this argument is that, while the defendants may have voluntarily initiated the judicial process, once having done so they were bound by the court procedures they invoked. The defendants state in their brief that they filed an application for court approval of the sale of an estate asset under General Statutes § 45-238. That section provides in part: "The court of probate may, upon the written application of . . . the exec-

utor or trustee under any will admitted to probate by such court, . . . *after public notice* and such other notice as the court may order and *after hearing,* if it finds that to grant such application would be for the best interest of the parties in interest, authorize the sale . . . of the whole or any part of . . . any real estate in this state of any . . . deceased person . . . ." (Emphasis added.) In addition to the public notice given in this case, the defendants personally contacted the plaintiff's agent and invited an offer to purchase. This statute contemplates an open and fair sale in "the best interest of the parties in interest." If the defendants did not seek to sell the property in such a manner, they should not have commenced the judicial process that is devised to lead to that end.

In sum, the filing of an application for the approval of the sale of an estate asset under General Statutes § 45-238 together with the executors' invitation to bid directed to the plaintiff conferred upon the plaintiff the right to offer to purchase that asset and to due process of law in the court approving that sale. When the plaintiff did not receive the process that was due to him under all the circumstances, he was injured in fact and aggrieved under General Statutes § 45-288.

There is error, the judgment is set aside and the case is remanded with direction to overrule the defendants' motion to dismiss.

In this opinion the other judges concurred.