[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
A
The Probate Court for the District of Meriden denied an application for appointment of conservator of the estate in the matter of Veronica S. Solnik after a hearing on September 8, 1992. Connecticut General Statutes, § 45a-644 inclusive to § 45a-663. On September 14, 1992, the Probate Court ordered that an appeal be allowed to the Superior Court. Thereafter, Gary Solnik, the son of the Veronica S. Solnik, filed in this court on October 5, 1992 a "Motion of Appeal From Probate."
On November 8, 1993, appellant Gary Solnik filed an amended complaint which listed his reasons for appeal as follows:
1. That Appellant, Gary J. Solnik, is the son of Veronica S. Solnik and as such son, he has a sufficient interest to entitle him to appear.
2. That Appellant, Gary J. Solnik, made application to the Probate Court for the District of Meriden for Appointment of a Conservator of the Estate of his mother, Veronica S. Solnik.
3. On September 8, 1992, the court made the following order and decree namely: the Application for Appointment of Conservator of the Estate in the matter of Veronica S. Solnik was CT Page 10963 denied.
4. The subscriber is aggrieved by the order and decree of this Court for the following reasons:
a. The Probate Court was provided with more than sufficient medical evidence indicating the Respondent's inability to manage her own financial affairs. Copy of said report is attached hereto as Exhibit A.
b. The Respondent suffers from Dementia — probably multi infarct Dementia.
c. The CT Scan and MRI of the brain shows evidence of multiple small ischemic infarcts.
On January 18, 1994, respondent Veronica Solnik filed an answer leaving appellant to his proof of aggrievement. On January 21, 1994, respondent Richard Solnik, a son of the respondent Veronica Solnik and a brother of appellant Gary Solnik, filed an answer denying that appellant is aggrieved by the order and decree of the Probate Court for the District of Meriden denying his application for appointment of conservator of the estate in the matter of Veronica S. Solnik.
A hearing was held in Superior Court on the matter on September 12, 1994. Respondent Veronica Solnik and respondent Richard Solnik asked the court to determine whether the appellant was an aggrieved person as a result of the Probate Court's decree denying his application. Connecticut General Statutes § 45a-186. Appeals to the Superior Court from any decision rendered by a Probate Court in any case after a record is made therein under sections 51-72 and 51-73 shall be on the record and shall not be a trial de novo. Connecticut General Statutes § 45a-186. Since no record was available, this appeal was heard de novo.
The court agreed to take evidence and to consider the issue of aggrievement at the conclusion of the evidentiary hearing. An appeal from the Probate Court to the Superior Court in a de novo proceeding is not limited to the claims raised in the Probate Court, therefore allowing an appellant to present any evidence in the Superior Court which could have been offered in the Superior Court, whether it was offered or not. Baskin'sAppeal from Probate, 194 Conn. 635, 641 (1984). The issue of aggrievement in the classical or common law sense is satisfied CT Page 10964 when the factual allegations in the reasons for appeal are established at trial by the appellant. Weill v. Lieberman,195 Conn. 123, 125 (1985). The appellant must set forth in his motion for appeal (1) the interest of the appellant in the subject matter of the decree or order appealed from or in the estate; (2) the adverse effect of the decree or order on that interest. Merrimac Associates, Inc. v. DiSesa, 180 Conn. 511,516 (1980). The interest must be a legally protected interest which is adversely affected, and it must be a direct interest in the subject matter of the decree from which the appeal is taken. Id. 516-17. Usually classical aggrievement requires a direct pecuniary interest in the outcome of the litigation. In probate appeals, however, a broader standard has evolved. Buchholz'sAppeal from Probate, 9 Conn. App. 413, 415 (1987).
Appellant in this case has stated in his reasons of appeal that he is the son of the respondent and as such son he has sufficient interest to entitle him to appear [appeal].Buchholz's Appeal from Probate, supra, pp. 417-418 considered a number of cases which involved an appeal of a blood relative from a probate decree affecting alleged pecuniary interests in an estate and concluded that standing to appeal from a probate decree based upon such familial relationships is not necessarily a legally protected status. Buchholz involved an appeal from a decision of a Probate Court denying plaintiff father's application to be named guardian of his adult mentally retarded daughter. The Superior Court, Hammer, J., dismissed the appeal for lack of subject matter jurisdiction holding that the plaintiff was not aggrieved within the meaning of § 45-288, now § 45a-186.
The Appellate Court set aside the judgment of dismissal and remanded the case for further proceedings.
The court concluded that the interest of a parent in a mentally retarded adult child is significantly different from the interest of any other family member since it is the only relationship that is constitutionally protected. The court therefore held that the father maintains both a legal interest and special status sufficient to constitute standing to appeal from an adverse decision of the Probate Court which denied him guardianship Buchholz Appeal from Probate, supra, p. 419. Ultimately, the Appellate Court found that classical aggrievement existed in this case. The court also found that the statute, § 45-322 — now § 45a-670 by implication grants legislative CT Page 10965 aggrievement to parents of adult mentally retarded children. The court examined the predecessor to § 45-322 and determined that the legislature intended to continue to recognize the special interest and status of a mentally retarded person.
Appellant argues that he is statutorily aggrieved based on the statutory provision of § 45a-648 which empowers any person to file an application for involuntary representation as conservator of the estate to supervise the financial affairs of a person found to be incapable of managing his or her own affairs.
Appellant contends that because the right to file an application for conservator of the estate may be filed by any person it naturally follows that an adult person who filed an application but was denied a conservatorship should be afforded an opportunity to appeal from the Probate Court's decision. In sum the appellant asks the court to interpret § 45a-648
exactly the same as the Appellate Court interpreted § 45-322, now § 45a-670 in the Buchholz case.
The respondent relies on a number of cases which denied standing in probate appeals to an only child of an incompetent parent, Fitzhugh v. Fitzhugh, 156 Conn. 625 (1968); a nephew of an incompetent who alleged he was a former ward of an incompetent and that he presently had responsibility for the care and maintenance of his aunt, Maloney v. Taplin, 154 Conn. 247 (1966); a son disputing the final accounting of a conservator of his mother, Graham v. Graham, 2 Conn. App. 25 (1984); a grandson attempting to appeal a decision of the conservator of his grandmother, Doyle v. Reardon, 11 Conn. App. 297 (1987); children of a ward seeking to overturn the Probate Court's decision to appoint the ward's spouse as conservatrix. In Re Charles H.MacEslin, 11 Conn. L.Rptr. #4, p. 104 April 104.
In all of these cases the court determined that connection by blood to a person's estate is not necessarily a legally protected status granting standing to appeal nor did potential liability for support or the potential to become an heir of a living person create a protected interest. A closer analysis of these cases reveals that they all involved appeals directed against the actions or existence of an appointed conservator. They differ from the facts in this case which involved only the denial of the appointment of a conservator sought by a son with reference to a respondent mother. CT Page 10966
The court finds the reasoning in Buchholz's Appeal fromProbate to be pertinent to this case. The Appellate Court therein relied in part on Cottrell v. Connecticut Bank Trust,175 Conn. 257, 264 to find an analogous status of an incompetent adult and a minor (now a retarded adult) which necessitates similar treatment be afforded to both. Buchholz involved a retarded child now an adult incompetent; this situation involves an allegation of adult financial incompetency. The two statutes, § 45-322, now § 45a-670, application for guardianship, and § 45a-648, application for involuntary conservatorship, permit "any person to file an application." (§ 45a-670 any adult person). The predecessor to § 45-322 clearly recognized the special status and rights of parents of mentally retarded children, Buchholz'sAppeal, Id. 452. Similarly, the predecessor to § 45a-648, Application for Conservatorship § 45-70 and its predecessors Sec. 6874 (1949 Rev.) recognized the special status of the husband, wife or any relative of such person in applications for conservatorships. Buchholz notes that the early legislation required notice of court proceeding in guardianships to be sent to parents § 45-323 and continued this practice in § 45a-671(b). Similarly, the early statutes on conservators provided for notice to children of the respondent, § 45-70c and the present statute continues to require such notice (§ 45a-649) today.
Accordingly, the court finds the applicant in this case to be statutorily aggrieved based on the statutory provision which permits any person to file an application for conservatorship. Since § 45a-648 specifically empowers any person to file an application for involuntary representation, it naturally follows that a person (specifically a relative, a direct descendant) who filed an application but was denied the conservatorship should be afforded an opportunity to appeal from the Probate Court's decision, since the denial adversely affects the right thus created. "A contrary conclusion would result in the finding of virtually unfettered and unreviewable discretion of the Probate Court in the making of such decisions."Buchholz's Appeal from Probate, Id., 424.
 B
The statute governing hearings for the appointment of a conservator § 45a-650 requires the court to receive evidence regarding the condition of the respondent, including a written report or testimony by one or more physicians licensed to CT Page 10967 practice medicine in the state who have examined the respondent within thirty days preceding the hearing. The court may also consider such other evidence as may be available and relevant, including but not limited to a summary of the physical and social functioning level or ability of the respondent, and the availability of support services from the family, neighbors, community or other appropriate source.
Section 45a-650(c) provides "If the court finds by clear and convincing evidence that the respondent is incapable of managing his or her affairs then the court shall appoint a conservator of his or her estate."
The statutory burden imposed on the applicant is a significant one. "Clear and convincing evidence falls somewhere between the belief required in an ordinary civil case, viz., more probable than not, and the belief required to find guilt in a criminal case, viz., beyond a reasonable doubt. To express the concept in terms of probability or degrees of belief or doubt, the two most recent opinions used such phrases as `highly probable' and `substantially greater probability that the facts are true rather than false'," Lopinto v. Harnes, 185 Conn. 527
(1981); Dacey v. Conn. Bar Assoc., 170 Conn. 520 (1976) Tait 
LaPlante, 2d Ed. 4.4.1.
The phrase "Incapable of managing his or her affairs" is defined in § 45a-644(d):
 "(d) `Incapable of managing his or her affairs' means that a person has a mental, emotional or physical condition resulting from mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs or alcohol, or confinement, which prevents that person from performing the functions inherent in managing his or her affairs, and the person has property which will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care or welfare of the person or those entitled to be supported by that person and that the person is unable to take the necessary steps to obtain or provide funds which are needed for the support, care CT Page 10968 or welfare of the person or those entitled to be supported by such person."
At the hearing before this court, the respondent did not testify or appear. Counsel appeared in her behalf and testified that he had been appointed by the Probate Court. He testified that he interviewed respondent before the September 8, 1992 hearing in the Judicial District of Meriden, that he also interviewed respondent's son David with whom respondent resided; and that he contacted Dr. Brown over the phone in order to discuss the doctor's report with him. The attorney testified that the respondent when he interviewed her was lucid; that he also observed her talking to the Probate Judge on September 8, 1992. He advised that court that respondent was capable of managing her affairs. He further testified that when he interviewed Dr. Brown over the telephone, the doctor expressed surprise that his written report was the only one submitted to the court. The attorney testified at the September 12, 1994 hearing that respondent was capable of managing her affairs.
Dr. Brown testified at the Superior Court hearing on September 12, 1994. He examined respondent on July 14, 1992; his report was submitted to the Probate Court on September 8, 1992. This examination was not within thirty days preceding the hearing § 45a650(a). Dr. Brown testified "he found evidence of dementia, problems of memory lapse, problem with date time that sort of thing." He concluded the respondent was not mentally ill but that the infarcts he found was probably the result of arteriosclerosis resulting from systolic hypertension which was not a big problem. It was the doctor's opinion that in general a person who couldn't remember her address, could not remember the date correctly, could only remember one out of three objects a few minutes later would be a person you wouldn't want to handle her own affairs. This testimony was consistent with the opinion expressed in the written physician's evaluation submitted as Exhibit A and a report to Alan Silberstein, M.D., dated August 10, 1992.
The court finds that the testimony of Doctor Brown is not of a clear and convincing quality. The doctor testified that this was the only case where "I've prepared the only medical evaluation" that was submitted to the Probate Court and admitted he had probably confused the process with the process for commitment of an adult to an institution. The witness did not appear comfortable with his individual opinion that respondent CT Page 10969 "cannot manage her affairs" since it lacked corroboration by a psychiatrist.
All three sons of the respondent testified at the hearing. The applicant Gary Solnik based his opinion of incapacity on the existence of a few unpaid bills and occasional confusion in the identity of the three sons. The eldest son, who managed his mother's estate by virtue of a power of attorney disputed his mother's incapacity. The most persuasive testimony came from David Solnik who resided with his mother and observed her on a daily basis. His opinion was that his mother was capable not only of managing her affairs but was also capable of caring for her personal needs such as bathing and eating.
Based on all the evidence submitted, the court concluded that the applicant has failed to sustain his burden of proof by the requisite standard of clear and convincing evidence that the respondent is incapable of managing her affairs.
Accordingly the appeal is dismissed.
Dorsey, J. State Trial Referee