[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING RE: DEFENDANT'S MOTIONTO DISMISS (FILE #101)
This is an appeal from the decree of the Farmington Probate Court, entered January 25, 1995, approving the private sale of an undivided one-half interest in land (26 plus or minus acres) by the conservator of the estate of the named defendant to Karen Wand. CT Page 9788
On October 19, 1994, William H. Wood, Jr., Esq., the conservator of the Estate of Hilda Rankin Olyphant, along with the daughter of Ms. Olyphant, Diane Case, entered into a listing agreement with T.R. Preston Co. Realty as the co-owners of acreage located on Mountain Spring Road, Farmington. Under the listing agreement, the parcel was offered for $385,000. The agreement called for "only non-contingent offers" and was "subject to Probate Court approval;" the listing was placed on the Multiple Listing Service, and on October 22, 1994 a "For Sale" sign was placed on the property.
On October 22, 1994, John Cellino, a principal in plaintiff corporation, contacted Calciano Realty to obtain information on the subject property. On October 24, 1994, plaintiff corporation made a written offer to purchase the said property for $320,000, and the offer was faxed to the offices of T.R. Preston Co.
On October 26, 1994, Charles Hartigan, of T.R. Preston Co., telephoned Calciano Realty indicating that there was a second buyer for the property, and that defendants were rejecting the $320,000 offer. On the same day, Hartigan, as an agent for the sellers, offered the property to plaintiff corporation for the sum of $350,000; this offer was verbally accepted and then reduced to writing at the direction of the defendants' agent(s). Also on October 26, 1994, James Calciano, of Calciano Realty, was prepared to hand deliver the written acceptance of the $350,000 offer to Hartigan, but was told the following day would be acceptable. On October 27, 1994, plaintiff was informed that a higher offer had come in, and that the defendants were going to accept it. On October 28, 1994, plaintiff prepared and signed an offer to purchase the land at $385,000, the actual listing price of the property; this offer was non-contingent and subject only to Probate Court approval.
The other offer referred to, made on October 27, 1994, was received from Karen Wand in the amount of $350,000; plaintiff alleges that the Wand offer was made subsequent to the offer by plaintiff corporation, and was not a higher offer, as Hartigan had represented to plaintiff. It is alleged that although plaintiff has met the terms and conditions of the listing agreement, and of Hartigan's offer to sell at $350,000, defendants have nevertheless refused, CT Page 9789 failed and neglected to sell the land to the plaintiff. Plaintiff also alleges it remains ready, willing, and financially able to purchase the property.
On January 25, 1995, the Probate Court approved the sale of the property to Karen Wand at the price of $350,000, which was $35,000 less than the final amount offered by plaintiff corporation. Plaintiff alleges that it was aggrieved by the order and decree of the Probate Court; the decree of the Probate Court allowing this appeal issued on February 25, 1995.
Defendants have moved to dismiss the appeal on the ground that this court lacks subject matter jurisdiction in that plaintiff does not have standing as an aggrieved person pursuant to General Statutes § 45a-186.[1] Defendants further assert that the appellant has not specifically stated in its motion a sufficient interest for appeal purposes, in that any such interest must involve a legally protected personal right or status, as required by General Statutes § 45a-191.[2]
"The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . ." Practice Book § 143. "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause, as any movement is necessarily the exercise of jurisdiction." Baldwin Piano Organ Co. v.Blake, 186 Conn. 295, 297, 441 A.2d 183 (1982). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original). Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991); Baskin's Appeal fromProbate, 194 Conn. 635, 640, 484 A.2d 934 (1984).
In an appeal from probate, the Superior Court is a court of limited jurisdiction, having only the jurisdiction granted to it by statute. Graham v. Estate of Graham, 2 Conn. App. 251,254 (1984). Since General Statutes Section 45a-186
(formerly section 45-288) authorizes appeals from probate only by those persons who are aggrieved by the decree appealed from, if an appellant is not actually aggrieved, the court is without jurisdiction to hear the appeal. Lenge v. Goldfarb,169 Conn. 218, 220 (1975); Zempsky's Appeal from Probate,
CT Page 97906 Conn. App. 521, 524 (1986); Graham v. Estate of Graham, supra at p. 254. In Kucej v. Kucej, 34 Conn. App. 579, 581-82
(1994), the Court stated:
 "[t]he trial court does not have subject matter jurisdiction to hear an appeal from probate unless the person seeking to be heard has standing . . . In order for an appellant to have standing to appeal from an order or decree of the Probate Court, the appellant must be aggrieved by the court's decision . . . Aggrievement as a concept of standing is a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal an order of the Probate Court . . . The question of [aggrievement] does not involve an inquiry into the merits of the case . . . Aggrievement falls within two categories, classical and statutory . . . Classical aggrievement exists where there is a possibility, as distinguished from a certainty, that a Probate Court decision has adversely affected a legally protected interest of the appellant in the estate. . . Statutory aggrievement exists by legislative fiat which grants an appellant standing by virtue of particular legislation, rather than by judicial analysis of the particular facts of the case . . . It merely requires a claim of injury to an interest that is protected by statute." (Emphasis added).
The instant case involves classical aggrievement, and therefore, as stated, the question presented is whether there exists a possibility, as distinguished from a certainty, that some legally protected interest which plaintiff has in the matter has been adversely affected. Baskin's Appeal fromProbate, supra at p. 637-38. The analysis used in probate appeals to determine whether a party is classically aggrieved by a decree or order includes consideration of (1) the interest of the appellant in the subject matter of the decree or in the estate, and (2) the adverse effect, if any, of the decree or order on that interest. Hartford Kosher Caterers,Inc. v. Gazda, 165 Conn. 478, 482 (1973); Buchholz's Appealfrom Probate, 9 Conn. App. 413, 416 (1987). The question of whether a party is aggrieved by a decree or order of the Probate Court is entirely separate from the question of whether that party, if the court has jurisdiction, would be likely to prevail on the merits of his claim. Hartford KosherCT Page 9791Caterers, Inc. v. Gazda, supra at p. 485. Thus, in the posture of this case, any question respecting whether the best price attainable was received for the real property does not have particular significance; that is, a disappointed, potential buyer does not necessarily sustain an injury by the fact that the conservator sold the property for less than optimum value. Heller's Appeal from Probate, 15 CLT 21 (5/22/89). "If an appellant is a mere stranger or interloper to the proceedings, with no direct interest in the outcome, the court is without jurisdiction to hear the appeal."Buchholz's Appeal from Probate, supra at p. 415. "The concept of standing, as presented by the question of aggrievement, `is a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal an order of the Probate Court.'" Merrimac Associates, Inc. v.DiSesa, 180 Conn. 511, 516 (1980).
With regard to this motion to dismiss, both parties have filed memoranda of law and related documentation. Defendants have filed the affidavit of Denise L. Case, which states: (1) prior to 3/30/95, she was the owner of a one-half interest in the subject land; (2) at no time prior to 1/25/95 did she accept, either orally or in writing, any offer to purchase the subject land submitted by plaintiff corporation; (3) on 10/27/94, she signed a real estate agreement to sell her undivided one-half interest in the land to Karen Wand, which agreement was prepared in conjunction with the interest of the Estate of Hilda Rankin Olyphant; (4) on 1/25/95, the affiant attended the Farmington Probate Court hearing on the conservator's application for the sale of the estate's undivided one-half interest in the subject land to Karen Wand; (5) at said hearing, she advised the probate judge that she had entered into a sales contract with Karen Wand and intended to sell her one-half interest in the property to Wand, as opposed to Schoolhouse; and, (6) on 3/30/95, the affiant transferred her one-half interest to Karen and Martin Wand for a purchase price of $175,000. Also submitted was the real estate contract, dated 10/27/94, signed by Denise L. Case, Mr. Wood, Conservator, Karen Wand, and the representative of T.R. Preston Co.; the agreed total purchase price for the tract was $350,000, and the only contingencies recited therein were that the sale was subject to Probate Court approval, and, that the parties would execute a bond for deed. The bond for deed was signed by the purchaser, Karen Wand, on November 10, 1994, and by the sellers, Mr. Wood, Conservator, and Denise L. Case, on CT Page 9792 November 14, 1994. By warranty deed dated March 30, 1995 (recorded the same date), Denise Case conveyed her undivided one-half interest in the realty to Karen L. and Martin Wand.
The documentation submitted by plaintiff in opposition to the motion to dismiss includes the application of the conservator for authorization to sell the estate's undivided one-half interest to Wand, the Probate Court decree authorizing the sale to Wand, the covering letter from the conservator to the Probate court enclosing the application for authorization to sell, and the affidavits of James F. Calciano and Donald A. Stern. The affiant Calciano states that at all relevant times he was a licensed real estate broker and agent; in such capacity, he attempted to sell the subject property to Schoolhouse; he worked and consulted with T.R. Preston which had the listing, and expected to be compensated by the sellers and/or Preston in the event Schoolhouse acquired the land; the property was listed at an asking price of $385,000, and it was the affiant's understanding that the land would be sold in conformity with the listing and to the one submitting "the highest offer"; such a condition was not in the listing agreement; on 10/19/94, the affiant submitted on behalf of Schoolhouse a written offer to purchase the property for $320,000, with no conditions other than those required by the sellers (execution of a bond for deed, and Probate Court approval), to which, on 10/25/94, the sellers verbally countered at $350,000; Schoolhouse accepted the counter-offer and, on the evening of 10/25/94, the buyers offered to run the revised contract over to Preston, but were assured the next day "would be fine in that the agent for T.R. Preston would not be available until then"; on 10/27/94, the affiant received a telephone call from the listing agent and was informed that a contract was signed with Karen Wand for the same amount as offered by Schoolhouse, $350,000; that Schoolhouse was not given an opportunity to counter, but the next day, submitted, through the affiant, a written offer of $385,000; subsequently," counsel for the sellers submitted to Schoolhouse a Bond for Deed "which was signed" for the full amount of $385,000," that is, for the precise listing price; and, the affiant further asserts that Schoolhouse was "fully capable financially of acquiring the property," the procedures followed were "irregular and unfair to Schoolhouse, and what transpired was certainly not in the best interests of the Estate." CT Page 9793
Through his affidavit, Donald Stern attests that he attended the Probate Court proceedings; the conservator's application did not refer to the Schoolhouse offer, or request a decision thereon; the covering letter of the conservator "merely referenced the last offer of [Schoolhouse] and failed to set forth the other [Schoolhouse] offers submitted . . ." prior to the Wand contract; neither the letter nor the application set forth the failure of the sellers to honor their verbal agreement of sale with Schoolhouse, as more particularly described in the Calciano affidavit; the Probate Court "accepted evidence on the [Schoolhouse] offer but upon the motion of Mrs. Wand's attorney and others," decided that it "only had in front of it the Wand contract to approve or deny;" and, "neither the Application to Sell nor the final decision . . reference or consider in any way the offer of [Schoolhouse]."
The application to sell real property was forwarded to the Farmington Probate Court under the cover letter of the conservator dated November 15, 1994; that letter recites, in part, the following:
 . . . we decided to market the property as raw land at an asking price of $385,000, and we received an offer for $350,000 from Karen Wand, which offer is attached to the enclosed Application.
 Subsequent to our accepting the Wand offer (subject to Probate Court approval), we received an offer for $385,000 from Schoolhouse Corporation, which offer is also enclosed with this letter."
The list of those entitled to notice of the probate hearing, enclosed with the conservator's covering letter, did not designate Schoolhouse as a party to whom notice should be given by the Probate Court.
It has been indicated that Schoolhouse was present and participated at the hearing on the conservator's application to sell to Wand held at the Farmington Probate Court on January 25, 1995. Participation in a proceeding conducted at a Probate Court does not, of itself, establish aggrievement; that is, merely because one was given notice of, and participated in, a probate hearing does not provide that person with the jurisdictional prerequisite to appeal from a CT Page 9794 decree of that court as an aggrieved person. Doyle v.Reardon, 11 Conn. App. 297, 307-08 (1987); see also: HartfordDistributors, Inc. v. Liquor Control Commission, 177 Conn. 616,620 (1979) ("Mere status, however, as a party or a participant in a hearing before an administrative agency does not in and of itself constitute aggrievement for the purpose of appellate review").
In Kaskel v. Steinberg, 142 Conn. 379 (1955), it was stated that to appeal from a Probate Court decree, a person "must have some pecuniary interest which the decree appealed from will in some way injuriously affect," and, that the "only persons . . affected by an order approving the sale of property constituting an asset of an estate are those to whom the estate will be distributed, or creditors if the estate is insolvent."[3] In Hartford Kosher Caterers, Inc. v. Gazda,
supra, it was recognized that "the frequent statement" that a party "must have a direct pecuniary interest . . . is too narrow to deal with the various types of cases presented by appeals from probate." An initial decree, later revoked, had directed the conservator to negotiate a sale of an estate asset with Hartford Kosher, and resulted in Hartford Kosher submitting the highest bid. However, a subsequent decree of the same court authorized the sale of the property to another bidder; the Supreme Court, in determining that Hartford Kosher was aggrieved by the second decree, stated:
 "Hartford Kosher's status as the chosen potential purchaser under the July 22, 1969 decree, while not the same as that of a party to the contract for the sale of land, does constitute an interest. This status and its attempted termination serve to distinguish this case from Kaskel v. Steinberg . . . If this status was terminated by the order of August 8, as Hartford Kosher pleaded, the result would constitute injury sufficient to satisfy the requirements of aggrievement."
165 Conn. supra at p. 485-86.
An important case dealing with the aggrievement issue, in the context of sales of estate property by bid, is MerrimacAssociates, Inc. v. DiSesa, supra; there, the Court reiterated its position that "to be aggrieved a plaintiff must have a pecuniary interest is too narrow a test to apply to appeals CT Page 9795 from probate," and went on to state:
 As our holding in Hartford Kosher Caterers, Inc.
clearly implied, the language of Kaskel v. Steinberg. . . that "[t]he only persons who are affected by an order approving the sale of property constituting an asset of an estate are those to whom the estate will be distributed, or creditors if the estate is insolvent," is far too narrow. While one who bids upon the property of an estate offered for sale has no interest in the property itself, he does have an interest in the proceedings employed by the court to approve the sale."
180 Conn. supra at p. 517-18. "The salient factor in Merrimac for its finding of aggrievement was that the plaintiff was denied a fair procedure in accordance with basic principles of due process."[4]Doyle v. Reardon, supra at p. 305.
In a more recent decision, Bishop v. Bordonaro, 20 Conn. App. 58
(1989), the Appellate Court concluded that there existed a factual basis sufficient to support a finding of aggrievement, applying the broader definition thereof established in Merrimac. The defendant administratrix inBordonaro had applied to the Probate Court for authority to sell the decedent's house; a hearing was noticed on the application to sell the property to the Bishops, who had signed a contract with the administratrix to buy the property for $150,000. At said hearing, the Probate Court chose instead to order a sale to an intervening party, Colonial, Ltd., which had offered to purchase the property for $185,000. Regarding aggrievement, the Court acknowledged that "[t]he general rule is . . a disappointed bidder lacks standing to commence a legal action," but observed further that "[i]n probate matters . . a much broader base of aggrievement is created by [Section 45a-186]." Quoting the Merrimac language ("interest in the proceedings employed by the court to approve the sale"), the Appellate Court held that "[u]nder this broad definition of aggrievement, the plaintiffs had standing to appeal the Probate Court's order to the Superior Court."
In the present case, the record before the court does not indicate that Schoolhouse had status as a prior "chosen purchaser" by any suggestion or directive of the Probate Court, as in the Kaskel and Hartford Kosher Caterers
decisions. Furthermore, having carefully reviewed the CT Page 9796 authorities cited by these parties, it is the court's view that notwithstanding certain language in Heller's Appeal fromProbate, supra, the circumscribed standard of aggrievement articulated in Kaskel has limited application currently, and particularly in the circumstances of this case. Even absent "chosen purchaser" status, and recognizing that Merrimac dealt factually with a deprivation of fundamental (constitutional) fairness in the conducting of the probate proceedings, the applicable standard under present law is that set forth inMerrimac and Bishop: " . . one who bids upon the property of an estate offered for sale has no interest in the property itself, [but] . . does have an interest in the proceeding employed by the court to approve the sale."
It is certainly accurate, as defendants emphasized at the hearing on this motion, that in Bishop, the plaintiff had a signed written contract with the fiduciary. However, if under the contemporary standard of aggrievement, as established byMerrimac, an appellant need not have an interest in the property itself, the legal significance of an enforceable sales-purchase contract (and/or bond for deed), in a determination of an aggrievement question, would seem somewhat less than contended by the defendants herein. In Merrimac, the aggrieved plaintiff was not a party to a written contract, and, in Kaskel and Bishop, the defendants (the successful bidders who prevailed) did not have written contracts to purchase.[5] In my view, the circumstance that Schoolhouse was not a prior "chosen purchaser," and/or did not have any written contract, is not dispositive of the aggrievement issue in this case.
According to plaintiff's reasons for the appeal, and the affidavits submitted, the real property was listed with T.R. Preston and placed on the Multiple Listing Service; there were negotiations between Schoolhouse (apparently through Calciano Realty) and the selling agent (T.R. Preston); a first offer by Schoolhouse was rejected; and, the counter-offer was accepted. The Calciano affidavit states that the buyers were ready to deliver a revised contract to T.R. Preston, but were told not to do so until the following day as the agent for the T.R. Preston Company would not be available until that time. Denise L. Case, "in conjunction with the Estate of [Olyphant]," entered into the written sales agreement with Karen Wand at a purchase price of $350,000, which was the same amount as the counter-offer communicated to Schoolhouse by CT Page 9797 Hartigan of T.R. Preston Co. Upon being advised of the Wand contract, Calciano submitted a written offer on behalf of Schoolhouse of $385,000, the amount at which the property was listed. Thus, the situation at the time of the filing of the application to sell, was one, as described by the conservator's attorney, where the conservator had a written contract for $350,000 from K. Wand, and Schoolhouse's written offer in the amount of $385,000. The Probate court was advised in the covering letter of both the Wand contract price and of Schoolhouse's greater offer. The conservator's application was to sell and convey the land upon the representation (of the conservator) "that it would be for the best interests of the parties in interest to sell the whole of said real property to Karen Wand at the proposed price of $350,000 of which one-half, or $175,000, represented the ward's interest, in such real property."
The Probate Court, on the conservator's application, was confronted with an issue of what would be in the best interest of the estate. General Statutes Section 45a-164 (a); Bishop v.Bordonaro, supra at p. 67. According to the Stern affidavit, the Probate Court heard evidence regarding plaintiff's offer, but determined "upon motion of Mrs. Wand's attorney," that all that was before the court was the Wand contract, to approve or deny; the result was the decree appealed from, granting authority to the conservator to sell the land to Karen Wand. On the totality of all the aforestated circumstances, it is the court's view that Schoolhouse, while not having an interest in the property itself, did have an interest in the proceedings employed by the Probate Court to approve the sale; and therefore, Schoolhouse was aggrieved by the probate decree under the "broad definition" of aggrievement established by the Merrimac and Bishop cases. Parenthetically, while it is certainly clear, as stressed by the conservator's attorney, that Merrimac centered on a deprivation of fundamental due process, it is my view that neither its broader definition of aggrievement, nor the application of that broader definition, is limited to the circumstance of inadequate notice or like considerations of due process. This is reinforced by theBishop decision in which the Merrimac standard was employed, aggrieved party status of the appellant was determined to exist, and yet there was present in that case, as in this one, no factual circumstance of any deprivation of fundamental or constitutionally required basic fairness. CT Page 9798
It is concluded that plaintiff in the present case had an interest in the proceedings employed by the Probate Court, that it enunciated that interest in the motion for appeal from probate (and, also, in the supplemental documentation submitted in opposition to this motion), that the plaintiff's interest was adversely affected by the decision and decree of the Probate Court, and therefore, plaintiff has properly appealed to the Superior Court as a person or party aggrieved
by a probate decree.[6] On the basis of the aforesaid, it is further concluded that this court has subject matter jurisdiction.
The motion to dismiss (File #101) is denied;