## ROBERT BUCHHOLZ'S APPEAL FROM PROBATE (4456)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued October 10, 1986—decision released January 6, 1987

*Hollace P. Brooks,* for the appellant (plaintiff).

*Barclay Robinson, Jr.,* for the appellee (defendant).

DUPONT, C. J. The plaintiff appeals from a judgment of the Superior Court which dismissed, on its own motion, his appeal from a decision of the Windsor Locks

Probate Court denying his application to be named guardian of his adult mentally retarded daughter. The sole issue of this appeal is whether the plaintiff is aggrieved by, and therefore has standing to appeal from, the Probate Court decree.

The facts are not in dispute. The plaintiff is the father and the defendant[1] is the mother of Trudy Buchholz, a twenty year old woman who is mentally retarded.[2] The parties were divorced in 1969, at which time the defendant was granted custody of her daughter. During the two years preceding the Probate Court's decree, however, Trudy Buchholz resided with the plaintiff in Windsor Locks.[3]

The plaintiff filed an application in the Probate Court pursuant to General Statutes § 45-322, seeking to be named guardian of his daughter's estate.[4] This application was opposed by the defendant. After a hearing, the Probate Court named the defendant as guardian and the plaintiff as standby guardian.[5] The plaintiff sub-

[1] Arlene L. Ackerman, as guardian of the estate of Trudy Buchholz, is the defendant in this case. The word "defendant" as used in this decision refers to Arlene Ackerman.

[2] The attorney appointed to represent Trudy Buchholz in this appeal has adopted the brief of the defendant.

[3] The plaintiff alleges in his brief that following the Probate Court's decision the defendant took her daughter to Idaho.

[4] General Statutes § 45-322, at the time of the plaintiff's application, provided in pertinent part that "[a]n application for guardianship may be filed by any adult person alleging that a respondent, by reason of the severity of his mental retardation is incapable of caring for himself and unable to make informed decisions about matters relating to his care. Such application shall be filed in the court of probate in the district in which the respondent resides or has his domicile." Section 45-322 was recently amended by No. 346 of the 1986 Public Acts. This amendment is unrelated to any issue presented in this case.

[5] General Statutes § 45-322 provides for the appointment of a standby guardian of the mentally retarded person, who "shall act if the appointed guardian of the mentally retarded person . . . dies, becomes incapable, or renounces his guardianship . . . ." A standby guardian thus has no authority or power to act until the appointed guardian dies or otherwise ceases to act as guardian.

sequently appealed from this decision to the Superior Court. The Probate Court issued its decree allowing the appeal.

The plaintiff's appeal was dismissed by the court for lack of jurisdiction. In dismissing the appeal, the trial court held that the plaintiff was not aggrieved within the meaning of § 45-288, and therefore had no right to appeal from the Probate Court's decree. That statute grants a right of appeal to "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specifically provided by law . . . ."

The jurisdictional requirement of aggrievement serves both practical and functional purposes to assure that only those parties with genuine and legitimate interests are afforded an opportunity to appeal. *Merrimac Associates, Inc.* v. *DiSesa,* 180 Conn. 511, 516, 429 A.2d 967 (1980). If an appellant is a mere stranger or interloper to the proceedings with no direct interest in the outcome, the court is without jurisdiction to hear the appeal. See *Graham* v. *Estate of Graham,* 2 Conn. App. 251, 254, 477 A.2d 158, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984); *Urrata* v. *Izzillo,* 1 Conn. App. 17, 19, 467 A.2d 943 (1983). Aggrievement falls within two broad categories, classical and statutory. The factors involved in whether classical aggrievement exists are tempered by the subject matter of the litigation. Classical aggrievement usually requires that the party claiming aggrievement has a direct pecuniary interest in the outcome of the litigation. *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984). Because of the types of issues often presented in probate appeals, however, the concept of aggrievement in such cases has evolved into a broader standard than that requiring a showing of a direct pecuniary interest. *Merrimac Associates, Inc.* v. *DiSesa,* supra; *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 484,

338 A.2d 497 (1973). Statutory aggrievement exists by legislative fiat which grants an appellant standing by virtue of particular legislation, rather than by judicial analysis of the particular facts of the case. *Weill* v. *Lieberman,* 195 Conn. 123, 124–25, 486 A.2d 634 (1985); *Baskin's Appeal from Probate,* 194 Conn. 635, 637–38, 484 A.2d 934 (1984); see *Pierce* v. *Zoning Board of Appeals,* 7 Conn. App. 632, 636, 509 A.2d 1085 (1986).

A two-prong analysis is used in probate appeals to determine whether a party is classically aggrieved by a denial, decree or order of a court of probate as provided by General Statutes § 45-288. *Hartford Kosher Caterers, Inc.* v. *Gazda,* supra. That analysis includes a consideration of "(1) the nature of the appellant's interest, and (2) the adverse effect, if any, of the Probate Court's decision on that interest." Id.

The nature of the interest claimed by the plaintiff is that he is the natural father of Trudy Buchholz, and was the parent with whom she resided for two years prior to the filing of the application for guardianship. The plaintiff alleges that a natural bond exists between a parent and his child, and that, because of this relationship, the parent has a legally cognizable interest sufficient for a finding of aggrievement within the meaning of § 45-288. The defendant alleges that because Trudy Buchholz is not a minor, the father has no continuing legal rights or duties relating to her welfare or care, and thus has no direct interest in the case. The trial court held that the assertion of the relationship of a father and his child does not constitute a sufficient interest to entitle the father to standing within the meaning of the statute.[6]

---

[6] In its ruling, the trial court stated: "First of all, does Mr. Buchholz have a status by virtue of his blood relationship with Trudy? I think we've—I think it's fair to say that there is no claim made here that Mr. Buchholz

It has been recognized that in order to have classical aggrievement, the nature of the interest that is presented must involve a legally protected personal right or status of the appellant. See *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 491–93, 400 A.2d 726 (1978); *Old Rock Road Corporation* v. *Commission on Special Revenue,* 173 Conn. 384, 386–87, 377 A.2d 1119 (1977); *Maloney* v. *Taplin,* 154 Conn. 247, 250, 224 A.2d 731 (1966); 4 Am. Jur. 2d, Appeal and Error § 183, p. 692. Our courts have previously considered the nature of the interest of various family members in probate decisions. We have held that a son did not have a real or legal interest sufficient for standing to appeal from a probate decision regarding the approval of a final account of the estate of his mother on the basis that he might potentially become liable in the future for her support. *Graham* v. *Estate of Graham,* supra. It has likewise been recognized that an only child of an incompetent parent did not have a sufficient legal interest to allege aggrievement in a probate proceeding involving the acceptance of the account of a conservatrix. *Fitzhugh* v. *Fitzhugh,* 156 Conn. 625, 239 A.2d 513 (1968). A nephew who claimed that he was the future heir and had the present responsibility for the care and maintenance of his incompetent aunt was held to not have a sufficient interest to appeal from an order of the Probate Court which assumed jurisdic-

has any legally—any legal status in the sense of ever having had legal custody of Trudy, or guardianship, for that matter. . . .

"So that it would appear that based on the reasons of appeal and the motion for appeal, there does not appear to be any factual basis for aggrievement insofar as the appellant is concerned. . . .

"[P]otential responsibility for the care and maintenance of a family member involves no real interest on his part in the matter in controversy. In other words, the mere possibility of future liability is not sufficient to give someone an interest. I would point out in this particular case, Mr. Buchholz's concern, of course, is not with respect to potential responsibility. He's—his interest is in assuming a responsibility which he feels that is a moral one on his part, if not a legal one."

tion of an application for the appointment of a conservator. *Maloney* v. *Taplin,* supra. An allegation that the appellant was the brother of the deceased and an heir-at-law was likewise not sufficient to constitute an interest to give rise to a right of appeal from a decision of the Probate Court admitting the will of the deceased. *Norton's Appeal From Probate,* 46 Conn. 527, 528 (1879).

These cases have all involved an appeal of a blood relative from a probate decree affecting alleged pecuniary interests in an estate. The general rule which has emerged from this scant body of caselaw regarding standing to appeal from a probate decree based upon such familial relationships is that the connection by blood to a person's estate is not necessarily a legally protected status. This case, however, is unique in that it does not involve the appeal of a decree affecting alleged pecuniary interests, but rather involves the standing of a parent to appeal from a probate decree affecting his rights to the companionship, care, and control over the welfare of his child. The status of a parent in relation to his child is different and distinguishable from any other type of familial relationship. Moreover, the nature of the parent and child relationship involves parental rights and duties which entail significantly different considerations than those involved in the resolution of claims alleging a person's pecuniary interests in an estate. Foremost among these considerations is the fact that the special bond between parent and child poses a unique relationship in which the natural rights and status of a parent are recognized in law. For this reason, it is undisputed that a parent has a personal stake and interest in the outcome of a controversy regarding his minor child. See *Maloney* v. *Taplin,* supra; *White* v. *Strong,* 75 Conn. 308, 53 A. 654 (1902); *Weisne's Appeal,* 39 Conn. 537 (1873); *Mongillo* v. *Jacobs,* 31 Conn. Sup. 158, 325 A.2d

531 (1974); *Battle* v. *Kahn,* 30 Conn. Sup. 407, 318 A.2d 647 (1973). Our conclusion that the interest of a parent in the welfare of his child is significantly different from the interest of any other family member is supported by the fact that only the relationship between parent and child is constitutionally protected. *McGaffin* v. *Roberts,* 193 Conn. 393, 400, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *Quilloin* v. *Walcott,* 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511, reh. denied, 435 U.S. 918, 98 S. Ct. 1477, 55 L. E. 2d 511 (1978). A parent, therefore, has a constitutionally protected right to the companionship, care, custody, and management of his child. See *Weinberger* v. *Wiesenfeld,* 420 U.S. 636, 652, 95 S. Ct. 1225, 43 L. Ed. 2d 514 (1975).

The trial court based its conclusion that the plaintiff has no direct interest in this case sufficient to constitute standing on the fact that his daughter has reached the age of majority. The court emphasized that because she was not a minor, the father had no continuing legal duty or right regarding the welfare of his child. This case, however, does not merely involve the interest of a father in the welfare of his adult daughter. Rather, this case deals with the specific issue of the nature of the interest of a father in the welfare of his daughter who has reached the age of majority, but who will always remain incompetent to manage her own affairs. She will always remain the mental equivalent of a minor child. In such a case, we hold that the father maintains both a legal interest and special status sufficient to constitute standing to appeal from an adverse decision of the Probate Court which denied him guardianship.

The rationale for this conclusion is that "[a]ttainment of majority cannot, of course, destroy the natural relationship existing between the parent and his child, and such relationship sometimes gives rise to rights and obligations different from those arising where the par-

ties are strangers. Parent and child are the nearest blood relation to each other . . . ." 59 Am. Jur. 2d, Parent and Child § 101, p. 200. Because of the special affinity existing between parent and child, a parent of a mentally retarded adult should enjoy the same legally protected rights and status as the parent of a minor. Thus, a father has sufficient standing as a parent to appeal from a decision of a Probate Court denying him the appointment of the guardianship of his adult daughter who is determined to be incompetent. See *In re Quinlan,* 70 N.J. 10, 34–35, 355 A.2d 647, cert. denied sub nom. *Garger* v. *New Jersey,* 429 U.S. 922, 97 S.Ct 319, 50 L. Ed. 2d 289 (1976).

Our Supreme Court has also recognized the analogous status of an incompetent and a minor which necessitates that similar treatment be afforded to both. *Cottrell* v. *Connecticut Bank & Trust Co.,* 175 Conn. 257, 264, 398 A.2d 834 (1978). The court recognized that the forerunner of the present guardianship statute[7] was amended in 1939 to extend coverage to both minors and incompetents without distinction between either class, "an act indicative of the similarity of concern shown to each group by the legislature." Id. For this reason, the fact that a mentally retarded daughter has reached the age of majority should not terminate the special status or legal interest that her father has in her welfare. In this case, the plaintiff is no interloper or stranger to the present controversy, but has the

---

[7] The present guardianship statute, General Statutes § 45-54, provides in part that "[i]n any proceeding before a court of probate or the superior court, whether acting upon an appeal from probate or otherwise, the court may appoint a guardian ad litem for any minor or incompetent . . . ." The forerunner of this statute was General Statutes (1939 Sup.) § 1286e, which provided for the provision of a guardian ad litem for minors.

This guardianship statute is distinct and separate from General Statutes § 45-322, and provides for the appointment of a guardian ad litem for various classes such as minors, incompetents, undetermined and unborn persons. Section 45-322, on the other hand, provides for the guardianship of the specific class of mentally retarded persons.

same real interests of paramount importance that are possessed by the parent of a minor child. Such interests grounded in the natural affinity between parent and child ultimately transcend and surpass the strict procedural barriers which were imposed by the trial court's ruling.

The plaintiff had a special and legally protected interest in the welfare of his adult mentally retarded child. That interest was adversely affected by the decision of the Probate Court. The denial of the plaintiff's application for guardianship of his daughter resulted in the loss of the general custody of Tracy as well as the loss of the opportunity to participate in and control her future welfare. As a parent who was denied the guardianship of his adult mentally retarded daughter, therefore, the plaintiff has established that he has specific personal and legal interests which were adversely affected by the Probate Court's decision. We find that classical aggrievement existed. See *Maloney* v. *Pac*, 183 Conn. 313, 320–21, 439 A.2d 349 (1981); *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra.

In reaching its conclusion, the trial court also determined that the legislature did not include in its enactment of § 45-322 a provision which made parents aggrieved persons.[8] Although the statute does not specifically provide that parents are aggrieved or give them the right to appeal, the statute, by implication, grants legislative aggrievement to parents of adult

___

[8] In its ruling, the trial court stated: "The—I would point out that section 45-322 provides that the application may be filed by any adult person, any adult person. So it would appear, insofar as the application is concerned, that there is no particular priority given to a parent or parents. Any adult person who has an interest of any kind, may file. So that the filing itself, does not, it would appear to the court, give Mr. Buchholz, or did not give Mr. Buchholz any further right than to put the wheels of the probate court in motion, to send out the proper notices and to convene a hearing, in which of course he participated, and also resulted in the appointment of an attorney."

mentally retarded children. The predecessor to General Statutes § 45-322 clearly recognized the special status and rights of parents of mentally retarded persons.[9] General Statutes (Rev. to 1981) § 45-78b. Such section required that the consent of the person's parents be obtained before a guardian was appointed. Id. Moreover, the statute provided that in order for one parent to be appointed guardian, the applicant must have had the consent of the other parent. Id. The plaintiff in this case would clearly be an aggrieved party under that statute. The statute was amended, however, in 1982 to delete the requirement of consent of the parents, and to enable "any adult person" to file an application for guardianship. General Statutes § 45-322. The legislative history of the statute reveals that this change was effectuated not because the legislature did not intend that parents be aggrieved parties, but rather because of a recognition of the fact that parents of mentally retarded adult persons were often difficult to locate or no longer available. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1982 Sess., pp. 351–52, remarks of Commissioner Gareth Thorne. In amending the statute to remedy this situation, however, the legislature intended to continue to recognize parental concern by requiring notice of court proceedings to be sent to the parents. Id.; General Statutes § 45-323 (b).[10] The intent of the legislature, therefore,

[9] The predecessor to General Statutes § 45-322 was General Statutes (Rev. to 1981) § 45-78b. Such section provided: "When it appears to the satisfaction of a court of probate that a person who resides in that probate district is a mentally retarded person, who requires in his best interests the appointment of a guardian of his person or of his property or of both, the court may appoint a guardian, upon application by (1) both natural or adoptive parents, if living; or (2) one parent, with the consent of the other, if living; or (3) any other interested person, with the consent of both parents or the surviving parent, if only one parent is living."

[10] Commissioner Gareth Thorne of the department of mental retardation testified at the judiciary hearing regarding the passage of the bill which was to become General Statutes § 45-322. His testimony included the following passage relating to the changes made by the new bill:

was to ease and hasten the procedure for the appointment of guardians, yet still maintain a recognition of the special interest and status of the parents of a mentally retarded person. Such intent would be frustrated if the parents receiving notice of such proceedings were not allowed to appeal from the decision of the Probate Court regarding the appointment of a guardian. The purpose of requiring notice is to afford parents the right to be heard. It would be anomalous to afford reasonable notice and an opportunity to present claims and defenses and then deny the right to appeal from an adverse decision.

The plaintiff's statutory aggrievement is based upon the statutory provision which enabled the plaintiff to file an application for guardianship. Section 45-322 specifically empowers "any adult person" to file such application. Because the right to file an application for guardianship was expressly given to any adult person, it naturally follows that an adult person who filed an application but was denied the guardianship should be afforded an opportunity to appeal from the Probate Court's decision. An adult person's statutory right to file an application for guardianship under § 45-322 implies a right to be appointed guardian, and this right

"This bill improves the process by which guardians are appointed for mentally retarded persons in four ways. One, it permits any adult person to file an application to initiate guardianship procedures.

"Current law requires consent of the parents of the mentally retarded adult prior to institution of such proceedings. However, many parents are no longer available and no longer involved in the lives of their children and cannot be located. However, it should be noted that the proposed bill continues to recognize parental concern by requiring notice to them of any court proceedings." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1982 Sess., p. 351.

As part of this amendment, § 45-322 now provides that "[t]he court shall direct notice [of the hearing on the application for guardianship] by certified mail to the following: (1) The parents of the respondent, provided the parents are not the applicants; (2) the spouse of the respondent, provided the spouse is not the applicant; (3) children of the respondent, if any."

would clearly be adversely affected by the Probate Court's denial of the application. A contrary conclusion would result in the finding of virtually unfettered and unreviewable discretion of the Probate Court in the making of such decisions.

"The concept of aggrievement depends only on the existence of a cause of action upon which a party may rest his plea for relief. . . . If the plaintiff had a cognizable cause of action in the Probate Court, he would be aggrieved by an order of that court denying him relief." *Baskin's Appeal from Probate,* supra, 638. In *Baskin's Appeal,* a statute allowed the Probate Court, on petition of the kin of a deceased, to award custody and control of the remains of the deceased to the relative who seemed most fit. The court held that the plaintiff was statutorily aggrieved and could appeal from a decision of the Probate Court which had denied him custody and control of his father's remains.

Ordinarily an appellant must establish the interest and nature of his aggrievement, but as General Statutes § 45-288 makes clear, that is only the case "unless otherwise specifically provided by law." *Weill* v. *Lieberman,* supra, 127. Here, as in *Weill,* the legislature did otherwise specifically provide in General Statutes § 45-322 that the plaintiff could appeal from an adverse decision of the Probate Court even if he were not able to establish classical aggrievement.

We conclude that the plaintiff thus has standing to appeal from the Probate Court's decree based upon both his status as a parent and as an adult person who has filed an application for guardianship pursuant to General Statutes § 45-322.

There is error, the judgment of dismissal is set aside and the case is remanded for further proceedings.

In this opinion the other judges concurred.