[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO STRIKE #110
The defendants Jason Fernandes and Federal Express Corporation have moved to strike Counts Three and Five of the plaintiffs' complaint dated July 24, 2002. Those counts alleging recklessness have been brought by the plaintiff Robert Carney against the defendants Fernandes and Federal Express. The defendants argue that the plaintiff Carney has failed to allege the necessary predicate facts essential to pleading and proving recklessness, and thus, these two counts should be stricken.
Additionally, these two same defendants also move to strike Counts Seven, Eight, Nine and Ten of the complaint. These counts, brought by the plaintiff Sandra Wood, allege negligence and recklessness claims against the defendants Fernandes and Federal Express. The defendants argue that Wood's claims of recklessness by Fernandes and Federal Express are also unsupported, and that as these defendants owed no duty to Wood, they cannot be negligent as it pertains to her. The defendants argue that Wood was not injured; she was not present at the scene; and there are no claims by her for a loss of consortium or wrongful death in this case.
The present action arises from a collision between the plaintiff, Robert Carney and the defendant Patricia Gaffney, on October 2, 2002. Carney was riding his bicycle as he approached the intersection of Broad and Park Streets in Guilford, Connecticut. The plaintiff Carney complains that his view of the intersection was blocked by a Federal Express delivery truck parked adjacent to the marked crosswalk. The truck was parked in a "no parking" zone within a short distance of the intersection and the crosswalk so as to obstruct the view of the intersection of those driving and those attempting to cross the intersection within the crosswalk. The parked Federal Express truck was under the control of the defendant Fernandes, who was operating the vehicle in his capacity as an employee of Federal Express. The plaintiff Carney alleges that he was proceeding to cross the intersection on his bicycle within the crosswalk, and as he emerged from behind the Federal Express truck, he was struck by the Gaffney vehicle, causing him serious personal injuries. The complaint CT Page 2987 alleges a violation of General Statutes § 14-231,[1] including that the Federal Express vehicle was parked "in such a way as to constitute a traffic hazard" and "in such a manner as to obstruct the free flow of traffic."
In Counts One, Two and Four the plaintiff Carney asserts claims of negligence against defendants Fernandes, Federal Express and Patricia Gaffney. However, in Counts Three and Five, which are a subject of this motion to strike, Carney also claims that these same actions constituted recklessness on the part of Fernandes and Federal Express.
The plaintiff Carney's mother, Sandra Wood, has alleged that she was required to return to Connecticut from her home in Tennessee to provide financial and emotional care to her son, who is not a minor, but rather is a mentally handicapped adult.[2] She claims damages arising from being "forced to expend considerable sums of money" on medical treatment for her son Carney, and for transportation, food and lodging costs while in Connecticut. Finally she claims loss for monies expended on program fees for her son because Mr. Carney was unable to benefit from these program services for several months as a result of the injuries he is alleged to have sustained in the accident. In Counts Seven through Ten, which are also subjects of the defendants' motion to strike, Ms. Wood, alleges claims of negligence and recklessness against Fernandes and Federal Express.
 I
The court first addresses the standard of review for a motion to strike. "The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985). A motion to strike shall be granted if "the plaintiff's complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." Mora v. Aetna Life and Casualty Ins. Co.,13 Conn. App. 208, 211, 535 A.2d 390 (1988).
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) Id. "A motion to strike is properly granted where a plaintiff's complaint alleges legal conclusions unsupported by facts." Id. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. BridgeportHousing Authority, 208 Conn. 161, 170, 544 A.2d 1185. (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein CT Page 2988 alleged." (Internal quotation marks and citations omitted.) AlarmApplications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541-50,427 A.2d 822 (1980).
Upon deciding a motion to strike, the trial court must construe the "plaintiff's complaint in [a] manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471,594 A.2d 1 (1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Mingachos v CBS, Inc., supra, 196 Conn. 108-09. However, if the plaintiff has alleged mere conclusions of law unsupported by the requisite facts, the motion to strike should be granted. Cavallov. Derby Savings Bank, 188 Conn. 281, 285, 449 A.2d 986 (1982).
 II
The court first addresses whether the plaintiff Carney has alleged sufficient facts, which if proven, would establish a cause of action for common law recklessness against the defendants Fernandes and Federal Express. Connecticut's standard for common law recklessness requires that defendant make "a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater than that which is necessary to make his conduct negligent." Bishop v. Kelly, 206 Conn. 608, 614-15, 539 A.2d 108 (1988), quoting Begley v. Kohl Madden Printing Ink Co., 157 Conn. 445,450-51, 254 A.2d 907 (1969) and Restatement (Second) of Torts § 500, comment g (1965).
In order to sustain a claim of recklessness, the plaintiff must allege facts showing that the defendant's conduct amounted to more than negligence. Dubay v. Irish, 207 Conn. 518, 532, 542 A.2d 711 (1988). It is more than negligence, more than gross negligence. Bordonaro v. Senk,109 Conn. 428, 431, 147 A. 136 (1929). "The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." Dubay v. Irish, supra,207 Conn. 532-33, citing Mooney v. Wabrek, 129 Conn. 302, 308, 27 A.2d 631
(1942). "While we have attempted to draw definitional distinctions between the terms willful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. `The result is that CT Page 2989 willful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention . . .'" Dubay v. Irish, supra, quoting W. Prosser W. Keeton, Torts (5th Ed.) 34, p. 214. See also, Cahill v. Carella, 43 Conn. Sup. 168,174, 648 A.2d 169, 11 Conn.L.Rptr. 513 (1994).
If the facts in the complaint reasonably support a claim of recklessness, they will be considered "sufficient to pass muster on a motion to strike, even though they are largely duplicative of the statements in the negligence count." Cahill v. Carella, supra, at 174. While there must be something more than a failure to exercise reasonable care to avoid danger to others, a pleading that states the conduct was reckless, supported by facts in the complaint, is sufficient to withstand a motion to strike. Id.
The plaintiff Carney has alleged the following in his complaint against the defendants, Fernandes and Federal Express:
The collision was the result of the reckless misconduct of the defendant Fernandes in that he knowingly and purposefully parked the Federal Express delivery van within twenty-five feet of an intersection and crosswalk when he knew or should have known that it was unsafe to do so, having regard to the width, traffic and use of such highway, the width and length of his motor vehicle, the intersection of the streets and the weather conditions then and there existing.
The defendants argue that these allegations are insufficient to indicate that the defendant Fernandes made a conscious choice to park the Federal Express vehicle knowing that his actions would pose a serious danger to others. The defendants continue that the routine act of parking a vehicle cannot be said to be synonymous with the imposition of danger or risk to the physical well-being of others, or with the requisite knowledge that there is a strong possibility that harm may result from such an activity. The defendants do concede that it is possible to imagine a scenario in which an allegation of reckless parking may succeed, however, the facts alleged in the present matter do not rise to that level.
The plaintiff argues that in asserting his claim of recklessness, he is not attempting to establish a new tort of "reckless parking," but is merely asserting a claim for injuries caused by the defendant's reckless CT Page 2990 misconduct. The plaintiff points to the decision by the United States District Court for the District of Connecticut in Lee v. Coss,39 F. Sup.2d 170 (D.Conn. 1999), aff'd 201 F.3d 431 (2nd Cir. Dec. 29, 1999), which determined that a defendant's reckless parking of a tractor trailer blocking a portion of a public highway, without providing warning to other drivers, was sufficient to support a jury's finding of recklessness. In Lee, the defendant, having experienced difficulties with his brake system, continued driving a considerable distance. Rather than safely exiting the highway when opportunities arose, the defendant continued on until his brakes locked. The defendant then stopped his truck in the travel portion of the highway, and sat in the truck cab for twenty minutes or more without placing warning triangles in the road. The defendant's parked truck was then struck by another vehicle. In contrasting Lee v. Coss from Dubay v. Irish, supra, 207 Conn. 518, the District Court upheld the jury's finding of recklessness because the driver failed to pull over when he knew he had problems with his brakes, and he sat in his truck for "at least twenty minutes" without placing warning triangles in the roadway.
Given the holding in Lee, it is possible to imagine scenarios where allegations of reckless parking may succeed, despite the fact that General Statute § 14-251 may be characterized as a generally minor traffic violation. However, the facts alleged in the present matter do not rise to the level of reckless conduct. The court does not find that the actions of the defendant Fernandes, in parking the Federal Express van in a "No Parking" zone, rises to the level of highly unreasonable conduct, involving an extreme departure from ordinary care, where a high degree of danger was apparent. Dubay v. Irish, supra, 207 Conn. 533;Craig v. Driscoll, 64 Conn. App. 699, 721, 781 A.2d 440 (2001); Cahillv. Carella, supra, 43 Conn. Sup. ___, 174, 11 Conn.L.Rptr. 513. The actions of Fernandes are not comparable to the reckless conduct of the defendant in Lee v. Coss, supra. 39 F. Sup.2d 170.
Whereas, the defendant Fernandes did not act recklessly in parking the Federal Express van, the plaintiff Carney's complaint cannot support a claim of recklessness against the defendant Federal Express, as the claim against Federal Express is solely predicated upon the actions of its employee, Fernandes, pursuant to General Statutes § 52-183, which provides in relevant part:
In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment . . . CT Page 2991
Accordingly, Counts Three and Five of the Complaint are hereby ordered stricken.
 III
The defendants Fernandes and Federal Express next move to strike Counts Seven, Eight, Nine and Ten of the Complaint, wherein the adult plaintiff Carney's mother Sandra Wood alleges negligence and recklessness against these two defendants. By the filing of these counts, Wood seeks damages for the providing of financial and emotional care to her adult handicapped child, due to the injuries her son is alleged to have sustained in the accident. The defendants argue that for the same reasons that the plaintiff Carney's allegations of recklessness in Counts Three and Five must fail, so must Wood's allegations of recklessness against the same two defendants fail. For the reasons set forth above relating to Counts Three and Five of the Complaint, Counts Eight and Ten are hereby ordered stricken.
In Counts Seven and Nine the plaintiff Wood alleges negligence against Fernandes and Federal Express. "Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others, fails to do so." Dean v. Hershowitz, 119 Conn. 398, 407-08, 177 A. 262 (1935). See also, RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384.650 A.2d 153 (1994). ("The essential elements of a cause of action in negligence are well established; duty; breach of that duty; causation; and actual injury.") The defendants argue that neither of them owed the plaintiff Wood a duty because she was not herself physically injured; she was not present at the scene of her adult son's injury; and there are no claims for a loss of consortium or wrongful death, by her in this case.
The defendants acknowledge that a parent of a minor child may bring a personal injury action in behalf of their minor child and in behalf of themselves, as a parent, for consequential damages, such as loss of services and expenses caused by the injuries to the child. Dzenutis v.Dzenutis, 200 Conn. 290, 308, 512 A.2d 130 (1986), citing Shiels v.Audette, 119 Conn. 75, 77, 174 A. 323 (1934); Krause v. Almor Homes,Inc., 147 Conn. 333, 335, 160 A.2d 753 (1960). However, no such claim is recognized for claims made by the parents of adult children for medical and other incidental expenses, even in cases where the child is deceased. Administrator of the Estate of Sin T. Sit v. Dighello Bros.Auto Sales, Superior Court, judicial district of Waterbury at Waterbury, No. X06-CV98-0149919S (Mar. 13, 2000) (McWeeny, J.), 2000 Ct. Sup. 4638.
The defendants also cite the Restatement (Second) of Torts § 703(b) CT Page 2992 comment f (2002), stating that "A parent cannot recover under the rule stated in this Section if an adult child is involved, even if the adult lives in the parents' home and actually renders assistance to him."
The plaintiff Wood argues that she has a special and legally protected interest in the welfare of her mentally handicapped adult son and that this type of relationship has been recognized by the Connecticut courts in Buchholz's Appeal from Probate, 9 Conn. App. 413, 420, 519 A.2d 615
(1987); and Pattavina v. Mills, Superior Court, judicial district of Middlesex at Middletown, No. CV96-0080257 S (Aug. 23, 2000) (Higgins, J.), 2000 Ct. Sup. 9684, 27 Conn.L.Rptr. 521. Buchholz's Appeal involved a parent's appeal from a decision of the Probate Court denying his application to be named guardian of his adult mentally retarded daughter. The sole issue was whether the parent was aggrieved by, and therefore had standing to appeal from the Probate Court's decree because the child was not a minor, and thus, the parent had no continuing rights or duties relating to the adult child's welfare or care. The trial court held that the assertion of the relationship of a parent and his child did not constitute a sufficient interest to entitle the father to standing within the meaning of the statute.[3] The Supreme Court held that because, by General Statute § 45-322, any adult person is authorized to file an application for guardianship of a mentally retarded person, and because a parent maintains a legal interest and a special status with relation to an adult mentally retarded child, the plaintiff, as a parent whose application for guardianship had been denied, had standing to appeal from that denial.
In reaching its decision in Buchholz's Appeal, supra, at 419-20, the court stated:
The trial court based its conclusion that the plaintiff has no direct interest in this case sufficient to constitute standing on the fact that his daughter has reached the age of majority. The court emphasized that because she was not a minor, the father had no continuing legal duty or right regarding the welfare of his child. This case, however, does not merely involve the interest of a father in the welfare of his adult daughter. Rather, this case deals with the specific issue of the nature of the interest of a father in the welfare of his daughter who has reached the age of majority, but who will always remain incompetent to manage her own affairs. She will always remain the mental equivalent of a minor child. In such a case, we hold that the father maintains both a legal interest and special status sufficient to constitute standing to appeal from an adverse decision of the Probate Court which denied him guardianship. CT Page 2993
The rationale for this conclusion is that "[a]ttainment of majority cannot, of course, destroy the natural relationship existing between the parent and his child, and such relationship sometimes gives rise to rights and obligations different from those arising where the parties are strangers. Parent and child are the nearest blood relation to each other . . ." 59 Am.Jur.2d ___. Parent and Child 101, p. 200. Because of the special affinity existing between parent and child, a parent of a mentally retarded adult should enjoy the same legally protected rights and status as the parent of a minor. Thus, a father has sufficient standing as a parent to appeal from a decision of a Probate Court denying him the appointment of the guardianship of his adult daughter who is determined to be incompetent. See In re Quinlan, 70 N.J. 10, 34-35, 355 A.2d 647, cert. denied sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319,50 L.Ed.2d 289 (1976).
The plaintiff had a special and legally protected interest in the welfare of his adult mentally retarded child. That interest was adversely affected by the decision of the Probate Court. The denial of the plaintiff's application for guardianship of his daughter resulted in the loss of the general custody of Tracy as well as the loss of the opportunity to participate in and control her future welfare.
In holding that the parent had a special and legally protected interest in the welfare of his adult mentally retarded child, that was adversely affected by the Probate Court's decree, the court stated, "The denial of the plaintiff's application of guardianship of his daughter resulted in the loss of the general custody [of the child], as well as the opportunity to participate in and control her future welfare." Id.
at 421. This is not analogous to the case at hand. In the present case the parent, who resides in Tennessee, was not living with her adult child. The parent is asserting a pecuniary right in her own behalf and not in behalf of the child. The parent has not brought this action in an official capacity as a legally appointed guardian in behalf of her adult child. She has instead, brought the action in her individual capacity.
The plaintiff also cites Pattavina v. Mills, supra. Pattavina addressed the question of whether or not parents and legal guardians of a mentally retarded adult, may assert a cause of action on their own behalf, for the negligent infliction of emotional distress caused to themselves by the abusive, wanton and wilful conduct of the defendants perpetrated upon their severely retarded son. The court in reaching its decision analyzed the parents' claims for negligent infliction of emotional distress using the traditional negligence principles: (1) whether the defendants owed a duty to the plaintiff-parents; (2) whether the defendants should have realized that their conduct involved an unreasonable risk of causing CT Page 2994 emotional distress to them; (3) whether such distress may result in illness or bodily injury to the plaintiffs, and (4) whether the plaintiff-parents suffered damages. The court answered these questions in the affirmative in ruling that the parents had an adequate basis in the evidence to recover against the defendants. The Pattavina court found that the defendants, abusive employees of a State institution, "owed a duty to the plaintiff parents . . . to provide adequate and reasonable care for their son." The duty grew out of the fact that the parents had "surrendered the care and maintenance" of their son to the State of Connecticut at the age of three years, and in doing so, they had "reposed a great deal of trust in the State" that had only been "enhanced and made more sacred" over a 35 year period.
In the present action the court has determined that the acts of the defendant Fernandes, in parking the Federal Express van in a "no parking" zone, was not reckless, and thus, was not wanton and wilful misconduct. Fernandes and Federal Express owed no duty to the plaintiff Wood. Her claimed damages are primarily financial, resulting from costs she has allegedly incurred for the care and treatment of her adult son, who is also a plaintiff in his own right. The court, while agreeing with the reasoning set forth in Pattavina v. Mills, supra, does not find that it is applicable to the factual situation presented in the case at bar.
While the court acknowledges that there is some appeal in recognizing a claim for damages by a parent of a mentally handicapped adult, the court concludes that the wiser judicial policy is not to recognize this type of claim. The cause of action asserted is a form of third-party liability of the defendants. That is, the parent seeks to recover from the defendants, not for tortious harms that the defendants inflicted directly on her, but for financial and emotional harms she alleges to have suffered as a result of the defendants' tortious conduct committed against another with whom she has close relationship, namely, her son. "The imposition of third-party liability on a tortfeasor is an exception to the general rule of the scope of tort liability that requires satisfaction of a special policy inquiry." Mendillo v. Board ofEducation, 246 Conn. 456, 480-81, 717 A.2d 1177 (1998); see also Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 383, 698 A.2d 859 (1997) ("[t]he ability of someone other than the injured party, e.g., the [injured party's] employer, to bring or to intervene in an action against [the tortfeasor] is a clear deviation from the common law"); 2 F. Harper, F. James O. Gray, Torts (2d Ed. 1986) § 6.10, pp. 334-35 ("on the whole there is no liability in negligence for economic loss unless it arises from bodily harm to plaintiff or from physical damage to property in which plaintiff has a proprietary interest"). CT Page 2995
Very few decisions have extended a tortfeasor's liability to a third party, and those decisions have relied heavily upon policy considerations. The primary example, is recognition of the claim for loss of spousal consortium. Hopson v. St. Mary's Hospital, 176 Conn. 485,496, 408 A.2d 260 (1979). In addition, the Connecticut Supreme Court has also held that considerations of public policy justified extending a tortfeasor's liability to the emotional distress suffered by a bystander, where (1) the bystander was closely related to the injured victim, (2) the bystander's distress was caused by contemporaneous sensory perception of the event, (3) the victim was seriously injured, and (4) the bystander suffered serious emotional injury. Clohessy v.Bachelor, 237 Conn. 31, 50-51, 675 A.2d 852 (1996).
"While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results . . ." Mendillo v. Board of Education, supra, 246 Conn. 484; quoting Clohessyv. Bachelor, supra, 237 Conn. 45-46.
"Moreover, where the primary victim of the tortious behavior recovers for her own injuries, those direct consequences of the wrongful conduct are compensated and the wrongdoer does not escape liability. Consequently, the fundamental policy purposes of the tort compensation system — compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct — are satisfied in large measure, and will not be vitiated if the defendant's liability is not extended further." Id., 482-83.
The general rule of limiting the tortfeasor's liability to the person directly harmed should prevail. "We acknowledge that as in any case that involves the question of whether our public policy, as a matter of common law, should recognize a new cause of action, the ultimate decision comes down to a matter of judgment in balancing the competing interests involved." Id., 495. The court, therefore, concludes that the balance of interests lies in declining to recognize a new cause of action for parents of adult mentally handicapped children. Accordingly, the motion to strike Counts Seven and Nine of the plaintiffs' complaint is hereby granted.
In summary, the Court hereby grants the defendants' motion to strike CT Page 2996 dated October 11, 2002. It is ordered that Counts Three, Five, Seven, Eight, Nine and Ten of the plaintiffs' Complaint are hereby stricken.
 The Court by Arnold, J.