LEONARD W. MARCHENTINE, JR. *v.* BRITTANY
FARMS HEALTH CENTER, INC., ET AL.
(AC 24422)

Lavery, C. J., and McLachlan and Peters, Js.

Argued April 29—officially released August 17, 2004

*Alfred F. Morrocco, Jr.,* filed a brief for the appellant (plaintiff).

*Charles W. Bauer,* with whom, on the brief, were *Jared Cohane* and *David G. Jordan,* for the appellee (named defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Leonard W. Marchentine, Jr., appeals from the judgment of the trial court granting the motion filed by the defendant Brittany Farms Health Center, Inc. (center), to dismiss his appeal from the order of the Probate Court for the district of Berlin.[1] On appeal, the plaintiff claims that the court improperly determined that he was not an aggrieved person pursu-

---

[1] In his complaint, the plaintiff named as defendants the center, Karen L. Joyce, conservatrix of the person of Margaret Marchentine, and Kenneth J. Carifa, conservator of the estate of Margaret Marchentine. Joyce failed to file an appearance, subsequently was defaulted and is not involved in this appeal. Carifa did not file a brief with this court.

ant to General Statutes § 45a-186 (a) and therefore lacked standing to appeal from the order of the Probate Court.[2] We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiff's appeal.[3] Margaret Marchentine, the plaintiff's mother, was receiving nursing care at the center starting in August, 2000. The bills pertaining to her care became delinquent, and on January 15, 2002, the center applied for the appointment of a conservator. The plaintiff received notice, pursuant to General Statutes § 45a-649, of the hearing on the center's application that was scheduled for February 6, 2002.[4] The plaintiff's request for a continuance to obtain counsel for himself and his mother was denied, and the hearing proceeded as scheduled.

On February 7, 2002, the Probate Court appointed Kenneth J. Carifa as conservator of the estate of Margaret Marchentine. The Probate Court also appointed Karen L. Joyce as conservatrix of the person of Margaret Marchentine. As a result of those appointments, the

[2] The plaintiff and the center filed briefs with this court. Only the center appeared and presented oral argument.

[3] The center captioned its motion as a "Motion for Summary Judgment." The court treated the center's motion for summary judgment as a motion to dismiss because it challenged the court's subject matter jurisdiction. See Practice Book § 10-30 et seq. "A motion to dismiss *admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts.*" (Emphasis added; internal quotation marks omitted.) *Coughlin* v. *Waterbury*, 61 Conn. App. 310, 314, 763 A.2d 1058 (2001).

[4] The record does not reveal when the plaintiff received notice of the hearing. General Statutes § 45a-649 provides in relevant part that "[u]pon an application for involuntary representation, the court shall issue a citation to the following enumerated parties to appear before it at a time and place named in the citation, which shall be served on the parties at least seven days before the hearing date . . . ." Thus, it appears that the hearing was held approximately three weeks after the center's application, and it is possible that the plaintiff received only seven days notice of the hearing.

plaintiff's power of attorney for Margaret Marchentine terminated pursuant to General Statutes § 45a-562 (b). The Probate Court on March 7, 2002, issued a decree allowing the plaintiff to appeal to the Superior Court.

In his appeal to the Superior Court, the plaintiff claimed that he is the only child and heir of Margaret Marchentine and was denied the opportunity to be heard at the hearing as a result of the Probate Court's refusal to grant him a continuance. He further alleged that he was aggrieved "by the decision to appoint a Conservator of the Estate and Person of Margaret Marchentine." On March 27, 2003, the center filed its motion to dismiss and a supporting affidavit. The center argued that the court lacked subject matter jurisdiction because the plaintiff was not aggrieved. The plaintiff filed an objection to the center's motion, as well as an affidavit supporting his objection.[5]

The court determined that neither the plaintiff's status as an heir of Margaret Marchentine nor the termination of his power of attorney aggrieved him within the meaning of § 45a-186. As a result, the court granted the center's motion.[6] Additional facts will be set forth as necessary.

At the outset, we identify the relevant legal principles and standard of review that govern the resolution of the plaintiff's appeal. "An appeal from a Probate Court

[5] The question of aggrievement was decided on the affidavits submitted by the parties. "Ordinarily, when issues of fact are necessary to the determination of the court's jurisdiction, a trial-like hearing must be held, in which the parties are provided an opportunity to present evidence and to cross-examine adverse witnesses. Affidavits, however, are an acceptable alternative to an evidentiary hearing when they disclose, as here, that no genuine issue as to a material fact exists." *Graham* v. *Estate of Graham*, 2 Conn. App. 251, 254 n.1, 477 A.2d 158, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984).

[6] The court filed its memorandum of decision on June 16, 2003. On July 17, 2003, the court filed an amended memorandum of decision to include a legal citation that had been omitted inadvertently.

to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court." (Citations omitted; internal quotation marks omitted.) *State* v. *Gordon*, 45 Conn. App. 490, 494, 696 A.2d 1034, cert. granted on other grounds, 243 Conn. 911, 701 A.2d 336 (1997) (appeal dismissed October 27, 1998).

"The trial court does not have subject matter jurisdiction to hear an appeal from probate unless the person seeking to be heard has standing. . . . In order for an appellant to have standing to appeal from an order or decree of the Probate Court, the appellant must be aggrieved by the court's decision. General Statutes § 45a-186 . . . . Aggrievement as a concept of standing is a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal an order of the Probate Court. . . . *The question of [aggrievement] does not involve an inquiry into the merits of the case.* . . .

"Aggrievement falls within two categories, classical and statutory. . . . *Classical aggrievement exists where there is a possibility, as distinguished from a certainty, that a Probate Court decision has adversely affected a legally protected interest of the appellant in the estate.* . . . Statutory aggrievement exists by legislative fiat which grants an appellant standing by virtue of particular legislation, rather than by judicial analysis of the particular facts of the case. . . . It merely requires a claim of injury to an interest that is protected by statute." (Citations omitted; emphasis added; internal quotation marks omitted.) *Kucej* v. *Kucej*, 34 Conn. App. 579, 581–82, 642 A.2d 81 (1994).

In the present case, we are faced with a question regarding only classical aggrievement. Furthermore, because that is a determination regarding the court's subject matter jurisdiction, it presents a question of law, and our review, therefore, is plenary. *In re Jessica M.*, 71 Conn. App. 417, 422, 802 A.2d 197 (2002). With the foregoing principles in mind, we now turn to the present matter.

The plaintiff alleged that he is the only child and heir, as well as the former holder of a power of attorney that terminated on the appointment of the two conservators of Margaret Marchentine. Additionally, the plaintiff sought to challenge the appointment of a person with substantially fewer ties to his mother as conservatrix of her person, as well as the appointment of a conservator of the estate of Margaret Marchentine. It is that combination of factors that results in the possible adverse effect on his legal interest, namely, the plaintiff's relationship with his mother. As a result, we conclude that the plaintiff has been aggrieved and therefore possesses the requisite standing to appeal from the decision of the Probate Court and is entitled to a de novo proceeding in the Superior Court.

The center argues that our Supreme Court's decision in *Maloney* v. *Taplin*, 154 Conn. 247, 224 A.2d 731 (1966), supports its claim that the plaintiff has not been aggrieved. We disagree.

In *Maloney*, the plaintiff, " 'the nephew and former ward of [the] alleged incompetent' "; id., 248; appealed from the decision of the Probate Court appointing a conservator over certain of his aunt's property. Id., 248–49. Our Supreme Court held that "[t]he plaintiff's allegation is that he is a nephew, former ward and prospective heir of the person for whom the conservatorship application has been made. The mere possibility of future inheritance cannot support an appeal by one who is

not otherwise directly aggrieved." Id., 250. The court went on to explain that the rationale for such a rule is to prevent appeals made on the basis of mere speculation rather than on actual fact. Id., 251. The court also stated that the plaintiff failed to identify in his complaint the specific legal duty he had to protect the interests of his aunt. Id.

In the present case, the plaintiff is not simply a blood relative, but the sole child and heir of Margaret Marchentine. "[T]he parent-child relationship is the earliest and most hallowed of the ties that bind humanity . . . ." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, 246 Conn. 456, 500, 717 A.2d 1177 (1998) (*Berdon, J.*, concurring in part, dissenting in part). Our Supreme Court has stated that this bond generates "a natural inclination to repose great confidence and trust . . . ." *Hieble* v. *Hieble*, 164 Conn. 56, 61, 316 A.2d 777 (1972).

To be sure, the relationship between an adult child and his or her parent is not of the same dimension or magnitude as that between a minor child and parent. See, e.g., *Butera* v. *District of Columbia*, 235 F.3d 637, 655–56 (D.C. Cir. 2001); *Wheat* v. *United States*, 860 F.2d 1256, 1262–63 (5th Cir. 1988). The United States Supreme Court has stated that "[w]e have never had occasion to decide whether a child has a liberty interest, symmetrical with that of her parent, in maintaining her filial relationship." *Michael H.* v. *Gerald D.*, 491 U.S. 110, 130, 109 S. Ct. 2333, 105 L. Ed. 2d 91 (1989).

We need not take up the difficult task of determining the scope of an adult child's interest in maintaining a relationship with his or her parent. Instead, in the context of the matter before us, we simply agree that "it seems . . . extremely likely that, to the extent parents and families have fundamental liberty interests in preserving such intimate relationships, so, too, do children

have these interests, and so, too, must their interests be balanced in the equation." *Troxel* v. *Granville,* 530 U.S. 57, 88, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (Stevens, J., dissenting).

We previously have identified the importance of the parent-child relationship as it applies to probate proceedings. In *Buchholz's Appeal from Probate,* 9 Conn. App. 413, 519 A.2d 615 (1987), the plaintiff father's appeal from the Probate Court's denial of his application to be named guardian for his adult mentally retarded daughter was dismissed for lack of aggrievement. Id., 413–14. In reversing the judgment of the trial court, we stressed the unique relationship between a parent and a child, as well as the fact that the appeal affected not mere pecuniary matters, but the "companionship, care, and control over the welfare" of the plaintiff's child. Id., 418. We went on to state that "[a]ttainment of majority cannot, of course, destroy the natural relationship existing between the parent and his child, and *such relationship sometimes gives rise to rights and obligations different from those arising where the parties are strangers. Parent and child are the nearest blood relation to each other . . . .*" (Emphasis added; internal quotation marks omitted.) Id., 419–20.

Nevertheless, the fact that the plaintiff is Margaret Marchentine's son does not automatically necessitate a finding of aggrievement. Our Supreme Court, in *Fitzhugh* v. *Fitzhugh,* 156 Conn. 625, 627, 239 A.2d 513 (1968), held that "[t]he allegation in [the plaintiff son's] motion for appeal that he is the only child of the incapable person does not bestow on him a real interest in the matter in controversy." See also *Doyle* v. *Reardon,* 11 Conn. App. 297, 304, 527 A.2d 260 (1987) ("plaintiff has no legally protected interest in the estate . . . solely by virtue of his blood relationship to her as her grandson"); *Graham* v. *Estate of Graham,* 2 Conn. App.

251, 255, 477 A.2d 158, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984).

In *Fitzhugh* v. *Fitzhugh*, supra, 156 Conn. 625, the plaintiff son appealed from the decree of the Probate Court accepting the account of the conservator, the incapable person's wife. The son alleged that he was the only child and an interested party in connection with the estate. Id., 625–26. The court, in upholding the trial court's dismissal of the appeal, concluded that the son had failed to support his claim of aggrievement with the necessary factual allegations. Id., 626–27.

It is not any one fact that distinguishes the present case from prior decisions, but rather the combination of circumstances that result in *this plaintiff* being aggrieved by the Probate Court's actions. Here, we are faced with a plaintiff who is the only child and heir of Margaret Marchentine, and who previously had been granted the power of attorney by Margaret Marchentine. Additionally, unlike the situations in *Maloney* and *Fitzhugh*, the plaintiff in this case, by opposing the appointment of a conservator of both the estate and the person of Margaret Marchentine, sought to retain the relationship forged out of the bond between parent and child, and was not motivated solely by financial concerns. The Probate Court, by appointing the conservators on the application of the center, a nursing home, impinged on the present, as opposed to a future or speculative, interest of the plaintiff. Essentially, the plaintiff lost the ability to continue his relationship with his mother without being subject to the control of the conservators, essentially strangers, without having the opportunity to be heard.

We conclude, therefore, that the plaintiff has a legally protected present interest in the care of his mother and that a possibility exists that this interest would be affected adversely by the appointment of a conservator.

Accordingly, the plaintiff was aggrieved and possessed the necessary standing to appeal from the Probate Court's actions. Thus, the trial court improperly granted the center's motion to dismiss.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.