DAVID DOYLE ET AL. *v.* THOMAS J. ABBENANTE,
JR., ET AL.
(AC 25527)

Dranginis, Harper and Peters, Js.

Argued March 28—officially released June 21, 2005

*Rosa C. Rebimbas*, with whom, on the brief, was *Edward G. Fitzpatrick*, for the appellants (plaintiffs).

*Hugh W. Cuthbertson*, with whom was *Mario J. Zangari*, for the appellees (defendants).

*Opinion*

PETERS, J. This case concerns the administration of the estate of a president of a corporation who allegedly engaged in conduct that violated his fiduciary duties to the corporation. Two substantially similar claims of corporate malfeasance were filed in Probate Court, one by the corporation itself and one by a shareholder purporting to act on behalf of the corporation. The shareholder appealed to the trial court from a Probate Court order denying his claim as untimely. The trial court dismissed the shareholder's appeal. The court held that it lacked subject matter jurisdiction to hear the appeal because the shareholder had not alleged facts sufficient to demonstrate how he was aggrieved by the denial of a claim on behalf of the corporation when the corporation had itself filed such a claim. The shareholder has appealed. We affirm the judgment of the trial court.

The plaintiff, David Doyle,[1] filed an appeal to the trial court to challenge the decision of the Branford Probate Court denying as untimely[2] his shareholder action against the estate of Thomas J. Abbenante, the deceased

---

[1] We refer to Doyle as the shareholder who appealed to the trial court and as the plaintiff in this opinion, even though Dominic Caciopoli was a coplaintiff at trial. The interest of the coplaintiff is identical to Doyle's interest.

[2] See General Statutes § 45a-360 (c), which provides in relevant part that "[i]f the fiduciary fails to reject, allow or pay the claim within ninety days from the date that it was presented to the fiduciary . . . the claimant may give notice to the fiduciary to act upon the claim . . . ."

The Probate Court held that in the face of inaction by the fiduciary of an estate, a claimant himself must notify the fiduciary to accept or reject his claim. If the claimant does not send such notice to the fiduciary, he cannot later pursue his claim in the Probate Court.

president of Ivy Biomedical Systems, Inc. (Ivy). On behalf of Ivy, the plaintiff alleged that the deceased had engaged in a number of acts of corporate misconduct for which his estate should be held accountable. The defendants were the three fiduciaries of his estate.[3]

In response, the defendants filed a motion to dismiss the plaintiff's appeal. They maintained that the trial court lacked subject matter jurisdiction to hear the appeal because the plaintiff was not aggrieved by the decision of the Probate Court. Under General Statutes § 45a-186 (a),[4] a showing of aggrievement is a prerequisite to an appeal from probate. See *Baskin's Appeal from Probate*, 194 Conn. 635, 637, 484 A.2d 934 (1984). The existence of aggrievement depends on "whether there is a possibility, as distinguished from a certainty, that some legally protected interest which he has in the estate has been adversely affected." *O'Leary* v. *McGuinness*, 140 Conn. 80, 83, 98 A.2d 660 (1953).

The trial court granted the defendants' motion to dismiss. Although it found that the plaintiff had a legally protected interest in the estate,[5] it held that he had failed to allege in what manner the Probate Court's order had adversely impacted that interest. The claim filed by the plaintiff, derivative in nature,[6] was predicated on Ivy's unwillingness to pursue a probate claim

---

[3] The defendants were Carmella Abbenante, Thomas J. Abbenante, Jr., and Patricia Abbenante, the surviving spouse and children of the decedent, whom the Probate Court had designated as fiduciaries of the estate.

[4] General Statutes § 45a-186 (a) provides in relevant part that "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the Superior Court . . . ."

[5] Although the trial court also considered the defendants' claim that the plaintiff and his coplaintiff at trial lacked standing to pursue a probate appeal, the trial court resolved that issue against the defendants. The defendants have not raised an issue of standing in this appeal.

[6] The plaintiff characterizes his claim as individual as well as derivative, but none of the allegations contained in his appeal are individual in nature.

of corporate malfeasance by its deceased former president. In fact, however, the corporation *did* file such a claim in the Probate Court. Accordingly, the court concluded that the plaintiff had not "sufficiently allege[d] aggrievement within the meaning of § 45a-186 (a) . . . ."

On appeal to this court, the plaintiff has raised two issues. He argues that (1) he sufficiently alleged that his interest in the estate was adversely affected by the Probate Court's denial of his claim because, in his view, Ivy had improperly settled its probate claim in a manner inconsistent with Ivy's best interests and (2) the trial court abused its discretion by denying his motion for reargument. We are not persuaded.

## I

## AGGRIEVEMENT

The plaintiff's principal contention is that, contrary to the determination of the trial court, he was aggrieved by the Probate Court's denial of the derivative claim that he had filed on behalf of Ivy in his own name and the other Ivy shareholders. Because lack of aggrievement implicates a court's subject matter jurisdiction, it presents a question of law and our review is plenary. *Marchentine* v. *Brittany Farms Health Center, Inc.*, 84 Conn. App. 486, 491, 854 A.2d 40 (2004).

The trial court concluded that the plaintiff was not adversely affected by the denial of his probate claim because the allegations in his probate claim closely resembled those contained in the claim that already had been filed by Ivy. Their linguistic similarity is indeed striking.[7] One possible distinction is that only the plain-

---

[7] The plaintiff's probate claim alleged that Ivy "has an unliquidated claim against the estate . . . for malfeasance and breach of fiduciary duty committed by [the decedent] while president of and director for that company. The undersigned shareholder along with other shareholders intends to commence a shareholder's derivative suit in the event that this claim is rejected by the Estate. This claim involves damages arising from the improper diversion of corporate assets to Dawn Pappas, an indemnification claim for any

tiff's probate claim refers to an unspecified interaction between Ivy and Elliot Associates, but the plaintiff did not elaborate on the Elliot Associates claim in his appeal to the trial court or to this court. In other respects, Ivy's claim was broader than that filed by the plaintiff.[8]

The plaintiff maintains, however, that even if Ivy did file a proper claim, it did not pursue the claim with the required rigor. His argument centers on Ivy's disposition of litigation that Dawn Pappas, a former Ivy employee, had initiated with respect to the decedent's malfea-

---

liability arising out of the lawsuit brought against the Company and the Estate by Pappas, and damages arising from the self-dealing and misrepresentation engaged in by [the decedent] in entering into Ivy's transaction with Elliot Associates, and the use by [the decedent] of the proceeds of the Elliot transaction to eliminate the Company's bank line to recover his pledged collateral. . . . This claim will be prosecuted by one or more shareholders acting on behalf of the Company, because the Company's current Board of Directors is not willing to pursue this claim and further demand is futile."

Ivy's probate claim alleged that "subsequent to the Decedent's death, a former employee of [Ivy] . . . Dawn A. Pappas, filed a Complaint dated March 15, 2000, in New Haven Superior Court, initiating a lawsuit against [Ivy] and the Estate of the Decedent as co-defendants, predicated upon actions purported to have been taken by the Decedent in his capacity as an officer and member of the board of directors of [Ivy], seeking damages in excess of one million ($1,000,000) dollars . . . ."

It further alleged that, although Pappas had withdrawn her complaint, she "recently filed a second Complaint setting forth the same claims as her earlier Complaint. . . . [W]hile Ms. Pappas was employed by [Ivy] and received annual compensation based upon a promise of full time work, she did with Decedent's knowledge and permission fail to work full time yet received her full annual compensation . . . .

"Decedent did, from time to time, allegedly authorize the issuance to himself of warrants to purchase common stock of [Ivy], which warrants were not approved of or ratified by the Board of Directors . . . . Decedent did allegedly authorize the issuance of warrants to one or more other persons to purchase common stock of [Ivy], which warrants may not have been approved or ratified by the Board of Directors . . . ."

[8] The plaintiff also suggests that he was aggrieved because the Probate Court denied his motion to open the estate. This decision was part and parcel of the Probate Court's determination that the plaintiff's claim was time barred. The plaintiff has not cited to us any authority to sustain the proposition that the absence of aggrievement to appeal a principal claim can be cured by reference to an ancillary claim.

sance. In his view, it is *possible* that Ivy's management of Pappas' complaint short-changed Ivy and improperly enriched the decedent's estate. In his view, this possibility is sufficient to establish his aggrievement.

The record discloses the following relevant facts. On May 6, 2002, when the Probate Court approved a final accounting filed by the defendants, the defendants did not acknowledge the claims previously filed by Ivy and by the plaintiff. Several months after the closing of the estate, Ivy filed a release relating to Pappas' claim. It also released the estate from liability for expenses arising out of Ivy's defense of that claim.

This is *all* that we know about Ivy's alleged failure to pursue viable claims against the estate of the decedent. We know nothing about the nature or the strength of Pappas' complaint except that Pappas allegedly was employed by Ivy at a time when the decedent was Ivy's president. We do not know whether the Pappas claim related to an alleged breach of contract or a violation of her personal or work place rights, whether it was timely or whether it was substantively provable or procedurally correct. Although the parties are not obligated to enlighten us about underlying claims that they choose not to litigate, they cannot expect us to fill in the gaps. Without some sort of a factual record, we cannot evaluate the propriety of Ivy's decision, "for 'good and sufficient' consideration," to release the estate from claims relating to the Pappas litigation.

The responsibility for alleging a factual basis for aggrievement for the purpose of taking a probate appeal falls squarely on the person taking the appeal. *Merrimac Associates, Inc.* v. *DiSesa*, 180 Conn. 511, 516, 429 A.2d 967 (1980). In pursuit of his derivative claim,[9] the

---

[9] For present purposes, we assume that a Probate Court may hear a derivative claim even though General Statutes § 34-522 (a) provides that such actions may be brought "in the Superior Court . . . ." Further, we assume that, in the Probate Court, a derivative claimant is not required to comply with other requirements articulated in § 34-522. Subsection (c) of

plaintiff was required to do more than speculate about the reason underlying Ivy's release of the estate. The right to judicial review of a probate claim because of a "possible" injury to a protected interest is not a license to proceed on the basis of hypothetical occurrences for which there is no support in the allegations or record.

We conclude, therefore, that the trial court properly granted the defendant's motion to dismiss the plaintiff's appeal from probate. The plaintiff failed to present the court with factual allegations sufficient to support his claim that Ivy was not fulfilling its corporate obligations to pursue the corporation's legitimate claims against the estate of its former president. Neither the trial court nor this court can fill this factual gap.

## II

### REARGUMENT

In the plaintiff's alternate claim for reversal of the judgment of the trial court, he argues that the court abused its discretion by denying his motion for reargument. In his view, the court (1) misapplied the law of aggrievement and took too narrow a view of the facts alleged in his complaint, (2) failed to clarify the significance of the fact that the estate was closed while Ivy's claim and his own were still pending, (3) should have taken into account the discrepancy between Ivy's "narrow release of one of its claims" against the estate and his own broader claims of breach of duty on the part of the decedent and (4) improperly required him to establish the probability that he would prevail as a part of demonstrating his aggrievement. We are not persuaded.

§ 34-522 requires a derivative complaint to "set forth *with particularity* the effort, if any, of the plaintiff to secure initiation of the action by the trustees, or the reasons for not making the effort." (Emphasis added.) General Statutes § 34-522 (c).

As a general matter, in the absence of the discovery of some new facts or new legal authorities that could not have been presented earlier, the denial of a motion for reargument is not an abuse of the discretion of the trial court. See, e.g., *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001). Accordingly, the plaintiff's disagreement with the court's evaluation of the factual record is not a sufficient basis for us to conclude that the court's denial of the plaintiff's motion was an abuse of its discretion. The plaintiff, therefore, cannot prevail on his first three contentions.

At first glance, the plaintiff's fourth contention stands on a more solid footing because it raises an issue of law. It is undisputed that a showing of aggrievement does not depend on a showing of ultimate success in the underlying litigation. The proper test for dismissal of a probate appeal is whether, on examination of the pleadings, the court is persuaded that there is no *possibility* that a probate order has adversely affected a putative appellant's legally protected interest. See *Baskin's Appeal from Probate*, supra, 194 Conn. 637–38.

It is, however, axiomatic that to prevail on a claim of law, an appellant must demonstrate that the trial court disregarded or misapplied the applicable principle. It is true that the court did not, in so many words, couch its dismissal of the plaintiff's appeal in terms of the possibility—or lack of possibility—that he might prevail. Nonetheless, the court properly focused its attention on the pleadings and not on their provability. Quoting *St. George* v. *Gordon*, 264 Conn. 538, 544–45, 825 A.2d 90 (2003), the court stated: "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to *allege* facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Emphasis added; internal quotation marks omitted.) We do not presume error. A trial court's ruling is entitled to the reasonable presumption that it is cor-

rect unless the party challenging the ruling has satisfied his burden of demonstrating the contrary. *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 7, 513 A.2d 1218 (1986).

We conclude, therefore, that the judgment of the trial court must be upheld. We are persuaded that the court properly concluded that the plaintiff did not satisfy his burden of alleging facts sufficient to establish his aggrievement. In the absence of such allegations, the court properly granted the defendants' motion to dismiss the plaintiff's probate appeal. We further conclude that the trial court did not abuse its discretion in denying the plaintiff's motion for reargument.

The judgment is affirmed.

In this opinion the other judges concurred.